UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GEC US 1 LLC, *et al.*,**<br><br>        Plaintiffs,<br><br>    v.<br><br>**FRONTIER RENEWABLES, LLC,**<br><br>        Defendant. | Case No.: 16-cv-1276 YGR<br><br>**ORDER ON PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND FOR EXPEDITED HEARING**<br><br>Re: Dkt. No. 21 |

Plaintiffs GEC US 1 LLC, AS (Wright) LLC, and Activ Solar Holdings (US) Inc. (collectively, "plaintiffs") bring this action against defendant Frontier Renewables LLC ("defendant" or "Frontier") arising out of the parties' contractual relationships with respect to their jointly owned venture, Wright Solar, LLC, which was formed to develop a power generation project (the "Wright Project"). Plaintiffs allege that defendant breached its contractual obligations under the various agreements among the parties related to the Wright Project. Defendant brings counterclaims arising out of alleged breaches of the same agreements against plaintiffs and Activ Solar GmbH, Activ Solar (UK) Ltd., Green Evolution Capital LLP, Colin Bent, Kaveh Ertefai, and Kim Koehler (collectively, "counterclaim defendants"). Based thereon, plaintiffs and defendant seek declaratory and injunctive relief resolving their respective contractual obligations. Plaintiffs additionally seek a speedy hearing pursuant to Federal Rule of Civil Procedure 57 and specific performance, while defendant seeks compensatory and punitive damages as well as attorney's fees from counterclaim defendants.

Currently pending before the Court is plaintiffs' motion for preliminary injunction under Rule 65 and for expedited hearing under Rule 57. (Dkt. No. 21.) Plaintiffs seek a preliminary injunction that, in their view, would allow "[e]nforcement of the parties' expectations." (Dkt. No. 44 at 11:5-6.)

Specifically, plaintiffs seek an order enjoining defendant from: (1) violating its obligations to provide access to Wright Solar's books and records; (2) violating its obligation to account and report for Wright Solar and consult plaintiffs on bid submissions for third-party power purchase agreements; (3) violating its obligation to act at the direction of plaintiffs; and (4) marketing and selling the Wright Project without plaintiffs' involvement. Defendant opposes. Having carefully considered the papers submitted and the pleadings in this action, oral argument held on May 17, 2016, and for the reasons set forth below, the Court hereby **DENIES** plaintiffs' motion. However, as described herein, the Court does order ongoing disclosures.

## I. BACKGROUND

This case centers on the contractual relationships between plaintiffs and defendant with respect to the Wright Project. Defendant allegedly began to breach its contractual obligations to plaintiffs in November 2015. (Dkt. No. 1, "Compl." ¶¶ 46-47.) Since that time defendant has failed to provide status updates to plaintiffs regarding the Wright Project (*id. ¶* 46), denied plaintiffs access to Wright Solar's books and records (*id.* ¶¶ 31-42), and declined plaintiffs' requests for reports and accounting on the Wright Project (*id.* ¶¶ 43-47). Defendant admits its failure to comply with the contractual provisions cited by plaintiffs in their complaint. Defendant, however, asserts it no longer has such obligations because plaintiffs have failed to make required payments, constituting material breaches of the agreements (*see* Dkt. No. 25, "Counter Compl." ¶ 97), and plaintiffs otherwise have defaulted by virtue of their parent company's insolvency proceedings in Austria (*id.* ¶ 131).

The Court recounts the salient allegations and facts establishing the history of the relationships among the parties relevant to the instant motion:

In March 2012, defendant formed Wright Solar as its sole member to develop the Wright Project. (*Id.* ¶ 21.)[1] In April 2012, plaintiffs and defendant entered into three agreements: (1) a membership interest purchase agreement ("MIPCA") by which defendant sold seventy-five (75) percent of its interest in Wright Solar to plaintiffs; (2) an LLC Agreement, *inter alia*, appointing defendant as the initial manager of Wright Solar and vesting decision-making authority in the

---

[1] The Court recognizes an inconsistency insofar as plaintiffs' complaint states that defendant formed Wright Solar in March 2011, not March 2012. (Compl. ¶ 11.)

2

majority owner; and (3) a development services agreement ("DSA") setting forth the development services defendant would provide to Wright Solar as its manager.  (*See* Dkt. Nos. 22-2, 22-3, 22-4.)

In June 2014, defendant sued plaintiffs for their alleged failure to make payments under the MIPCA and LLC Agreement.  (Dkt. No. 22-5.)  Defendant dismissed that lawsuit in July 2014 when the parties entered into an omnibus agreement and waiver (the "Omnibus Agreement").  (*See* Compl. ¶ 21; Dkt. No. 22-1.)  The Omnibus Agreement reflects the parties' desire to cooperate and enter into a joint sale process to sell all membership interests in Wright Solar.[2]  (Dkt. No. 22-1 at 2.)  Under the Omnibus Agreement, defendant remained the manager of the Wright Project and plaintiffs were to pay defendant a monthly development and management fee until the sale of the Wright Project.  (*Id.* at 4-6.)  The parties thereafter extended the joint sale period several times through amendments to the Omnibus Agreement.  (Compl. ¶ 24.)  The fourth – and latest – amendment to the Omnibus Agreement revises the services fee plaintiffs must pay defendant during the joint sale period as extended thereby.  (Dkt. No. 22-6 at 4.)

The instant dispute arose out of the parties' differing views on the bounds of plaintiffs' ongoing payment obligations as defined in the fourth amendment, paragraph 2.2(b).  Defendant alleges that plaintiffs have defaulted on the Omnibus Agreement by failing to pay monthly development services fees since September 2015.  (Counter Compl. ¶ 39.)  Defendant sent plaintiffs a notice of default outlining their failure to (i) pay defendant the $39,000 monthly services fee and (ii) reimburse defendant for expenses it incurred on behalf of Wright Solar.  (*Id.* at ¶¶ 39-41.)  As of the date of the counter-complaint, defendant alleged that plaintiffs owe $253,000 under the fourth amendment to the Omnibus Agreement.  (*Id.* at ¶ 97.)  By contrast, plaintiffs allege they have made all required payments because the fourth amendment requires them only to pay defendant services fees in May and June 2015.  (Compl. ¶ 26.)

On February 10, 2016, the alleged parent company of plaintiffs, Activ GmbH, initiated insolvency and reorganization proceedings in the European Union.  (Counter Compl. ¶ 55.)  Defendant alleges the insolvency proceedings qualify as an "Insolvency Event" as defined in the LLC

---

[2] The Omnibus Agreement also addresses other joint ventures and projects not at issue in this litigation.  (*See* Dkt. No. 22-1.)

Agreement, rendering plaintiffs a "Defaulting Member" under the MIPCA. (*See id*. ¶¶ 72-75.) Defendant further alleges that MIPCA section 11.3(b) allows it, as the non-defaulting member of Wright Solar, to take possession of plaintiffs' seventy-five (75) percent interest in Wright Solar. (*Id.*)

As a result of these disputes defendant has effectively shut plaintiffs out of Wright Solar. (*See* Compl. ¶¶ 49-51.) Plaintiffs now seek a preliminary injunction from this Court compelling defendant to comply with its obligations to plaintiffs under the agreements.

**II.     MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs move for preliminary injunctive relief under Rule 65 on its claims for (i) declaratory judgment and (ii) specific performance of the agreements. In a diversity case such as this one the Court must first determine whether plaintiffs would be entitled to injunctive relief under applicable state law; in this case the law of Delaware controls. *See Sims Snowboards, Inc. v. Kelly*, 863 F.2d 643, 647 (9th Cir. 1988) (under the *Eerie* doctrine, a district court sitting in diversity should first determine whether a preliminary injunction would be available under state law); LLC Agreement § 20.7 (Dkt. No. 22-3 at 36-37). Only if injunctive relief is available under Delaware law will the Court apply the standards of Rule 65. *See Sims Snowboards*, 863 F.2d at 647; *Int'l Medcom, Inc. v. S.E. Int'l, Inc.*, 2015 WL 7753267, at *2 (N.D. Cal. Dec. 2, 2015).

To obtain a preliminary injunction under Delaware law, plaintiffs must demonstrate: (1) they have a reasonable probability of success on the merits of their claims; (2) they will suffer imminent, irreparable harm if an injunction does not issue; and (3) the harm to plaintiffs without the requested injunction outweighs the harm to defendant that will result from the injunction.[3] *C & J Energy Svcs., Inc. v. City of Miami Gen. Employees*, 107 A.3d 1049, 1066 (Del. 2014). While plaintiffs must demonstrate all three elements, "[a] strong showing on one element may overcome a weak showing on another element," under the three-part test. *In re the New Maurice J. Moyer Academy, Inc.*, 108

---

[3] Defendant argues that the Court should use a heightened standard applicable to a mandatory injunction because plaintiffs' requested injunction would compel defendant to act. *See C & J Energy Svcs., supra,* 107 A.3d at 1053-54 ("Mandatory injunctions should only issue with the confidence of findings made after a trial or on undisputed facts.") The Court need not resolve this issue. As discussed herein, plaintiffs have not demonstrated they are entitled to injunctive relief even under the less stringent standard set forth above.

4

A.3d 294, 311 (Del. Ch. 2015) (alteration in original) (quoting *Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 579 (Del. Ch. 1998)).  The Court addresses these three elements below.

### 1. Reasonable Probability of Success on the Merits

To satisfy the first element, a party must "demonstrate that it will prove that it is more likely than not entitled to relief." *C & J Energy Svcs.*, 107 A.3d at 1067 (internal quotations omitted).  Said otherwise, the Court must be convinced that plaintiffs have a more than fifty-percent chance of success on the merits of their claims for breach of contract to find in plaintiffs' favor on the first element.  This standard applies "in cases where the improbability of ultimate success is because of a question of law, but as well where it appears from an examination of evidence upon a disputed question of fact."  *Gimbel Signal Cos., Inc.*, 316 A.2d 599, 602 (Del. Ch. 1974), *aff'd*, 316 A.2d 619 (Del. 1974).

In addition to proving they are more likely than not to prevail by showing defendant's breaches, plaintiffs must also show they are likely to establish that specific performance is the appropriate remedy.  To do so, plaintiffs must "establish that (1) a valid contract exists, (2) [they are] ready, willing, and able to perform, and (3) that [sic] the balance of equities tips in favor of [plaintiffs as] the party seeking performance." *Osborn v. Kemp*, 991 A.2d 1153, 1158 (Del. 2010).  "Under Delaware law, specific performance is an extraordinary remedy," and a "'party is never entitled to specific performance; the remedy is a matter of grace and not of right, and the appropriateness rests in the sound discretion of the court.'"  *LocusPoint Networks, LLC v. D.T.V. LLC*, 2015 WL 5043261, at *18 (N.D. Cal. Aug. 26, 2015) (quoting *West Willow-Bay Ct., LLC v. Robino-Bay Ct. Plaza, LLC*, 2007 WL 3317551, at *13 (Del. Ch. June 19, 2007)).  In analyzing whether it should provide preliminary relief in the form of specific performance, the "the court must keep in mind, in assessing the reasonable likelihood of success, that [plaintiffs] will bear the burden of establishing [their] case by clear and convincing evidence." *Cirrus Holding Co. Ltd. v. Cirrus Industries, Inc.*, 794 A.2d 1191, 1201-02 (Del. Ch. 2001) (internal quotations omitted).

Here, plaintiffs fail to show they are entitled to specific performance at this juncture.[4] It is undisputed that valid contracts exist (prong one). Whether plaintiffs are ready, willing, and able to perform their own obligations thereunder (prong two) is vigorously disputed. As discussed above, defendant claims that plaintiffs have breached payment obligations, owing $253,000 at the time of the filing of their counter-complaint. Defendant also presents evidence showing that plaintiffs are likely a Defaulting Member under the terms of the MIPCA by virtue of their parent company Activ GmbH's insolvency proceedings in the European Union. In light of defendant's evidence tending to show plaintiffs' own breaches and default, plaintiffs are unable to show by clear and convincing evidence that they are ready, willing, or able to perform under the terms of the agreements. Finally, as addressed in detail in Section II.3, *infra*, plaintiffs are similarly unable to show that a balance of the equities tips in their favor (prong three). Consequently, they have not established they are more likely than not entitled to the relief they seek under element one, *i.e.* specific performance.

### 2. Imminent and Irreparable Harm

A party requesting preliminary injunctive relief must establish that it will suffer irreparable harm absent the immediate relief it requests. *Bertucci's Rest. Corp. v. New Castle Cty.*, 836 A.2d 515, 521 (Del. Ch. 2003) (preliminary injunction "is granted only sparingly and only upon a persuasive showing that it is urgently necessary....") (quoting *Cantor Fitzgerald, supra*, 724 A.2d at 579). The party must show that the alleged injury is "imminent and genuine, as opposed to speculative." *Aquila, Inc. v. Quanta Svcs., Inc.*, 805 A.2d 196, 208 (Del. Ch. 2002). Thus, a mere possibility of harm is not sufficient to warrant the extreme remedy of a preliminary injunction. *See id.*; *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

---

[4] Defendant additionally argues that plaintiffs failed to establish they are "more likely than not" to prevail on their underlying breach of contract claims. As discussed above, defendant does not dispute that it has failed to comply with certain obligations, but instead argues it has not breached its contractual obligations insofar as (i) its own breaches are excused by plaintiffs' material breaches of the same agreements (*i.e.* failure to make payments), and (ii) plaintiffs are a Defaulting Member of Wright Solar and no longer have any interest therein by operation of the MIPCA's insolvency provision, section 11.3(b). Finding that plaintiffs fail to establish they are entitled to the specific performance they seek, the Court declines to reach whether plaintiffs have established they are more likely than not to prevail on their underlying claims.

6

Plaintiffs contend that their current inability to govern Wright Solar jointly with defendant "even if the [company] is purportedly prospering" constitutes irreparable injury. (Dkt. No. 21-1 at 18:20-21) (citing *In re Shaw & Elting LLC*, 2015 WL 4874733, at *28 (Del. Ch. Aug. 13, 2015) (addressing irreparable injury under the Delaware Corporate Code, section 226)). In that regard, plaintiffs contend that the loss of their opportunity to oversee bid submissions for the purchase of the Wright Project, the expiration of land purchase and lease agreements, and the inability to obtain proper permitting collectively constitute irreparable harm. As defendant argues, however, all of these alleged harms are purely speculative. Plaintiffs present no evidence that defendant has foregone any business opportunities or will cause any harm to Wright Solar. By contrast, defendant submits evidence tending to show that plaintiffs drained Wright Solar's bank account and improperly have attempted to gain access to Wright Solar's various accounts on multiple occasions.

The potential harm plaintiffs posit is also not of the type that supports injunctive relief to take control of a prospering company. Plaintiffs primarily rely on the Delaware Chancery Court's opinion in *In re Shaw*, *supra*, for the proposition that loss of control of a company can constitute irreparable harm. In that case, the court began with the notion that "irreparable harm to a corporation has been found to include harm to a corporation's reputation, goodwill, customer relationships, and employee morale." *In re Shaw*, 2015 WL 4874733, at *28 (internal quotations omitted) (collecting cases). The Delaware Chancery Court went on to find on the record before it that the company's "governance structure is irretrievably dysfunctional," and that dysfunction threatened "grievous harm" to the corporation's morale, goodwill, and reputation. *Id*. Here, by contrast, plaintiffs present no evidence of dysfunction that could lead to long-term harm to Wright Solar. Plaintiffs' reliance on *In re Shaw* is therefore misplaced.

Plaintiffs fundamentally fail to establish that the losses they might incur are not compensable at law, *i.e.* with money damages. A conclusory statement that the Wright Project is a "unique asset" does not suffice. (*See* Dkt. No. 44 at 11:1-2.) Plaintiffs have not established irreparable harm absent a showing that, should plaintiffs prevail, a future attempt to calculate money damages would involve speculation. Accordingly, plaintiffs have not met their burden to demonstrate imminent or irreparable harm.

### 3. Relative Harms to Plaintiffs and Defendant

Under the third element the Court must consider and balance the equities among the parties. The Court easily concludes that this element tips sharply in favor of denying a preliminary injunction. Defendant presented evidence that plaintiffs: are owned by an ultimate parent company that is insolvent; are themselves underfunded companies; and transferred assets amongst the plaintiff companies in part to avoid their obligations under the agreements. Moreover, defendant takes the position that plaintiffs have lost their ownership interest in Wright Solar by virtue of the insolvency provisions. If any of defendant's allegations is true, defendant risks handing control of Wright Solar over to companies that have no incentive to market and sell the Wright Project adequately. Plaintiffs, by contrast, have not presented any evidence indicating defendant will not run Wright Solar in a responsible and profitable manner. As such, the equities tip sharply in favor of defendant.

\*\*\*

For the reasons set forth above the Court finds that plaintiffs have not established any of the necessary three elements to entitle them to a preliminary injunction under Delaware law. Finding at the outset that plaintiffs have not met their burden under state law, the Court need proceed with an analysis under the federal standard for a preliminary injunction under Rule 65. Plaintiffs' motion for preliminary injunction is **DENIED**.

### III. MOTION FOR EXPEDITED HEARING

Federal Rule of Civil Procedure 57 grants district courts authority to "order a speedy hearing of a declaratory-judgment action." Whether to exercise that authority is discretionary. Fed.R.Civ.P. 57 ("The court *may* order…") (emphasis supplied); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995) ("district courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act"). A speedy hearing on a declaratory judgment action is appropriate when it will "terminate the controversy or at least substantially narrow the issues." *Allergan, Inc. v. Valeant Pharm. Int'l, Inc.*, 2014 WL 4181457, at \*3 (C.D. Cal. Aug. 21, 2014). "Other factors [for the district court to consider] include whether there is a pending state court proceeding; whether the facts are relatively undisputed; and whether the plaintiff shows the need for urgency." *Id*. at \*3 (internal citations omitted).

Plaintiffs argue that a speedy hearing is appropriate here to resolve its declaratory judgment and specific performance claims. Specifically, plaintiffs argue that a comprehensive hearing and determination of the parties' contractual obligations will resolve the parties' interests in Wright Solar. "Only then will [plaintiffs] be allowed to safeguard [their] substantial investment and assure the progress of an actual sale of the Wright Project." (Dkt. No. 44 at 11:17-18.)

In opposition, defendant contends that plaintiffs' declaratory judgment claim is not worthy of speedy adjudication for three reasons. First, defendant contends that adjudication of the declaratory judgment claim would not resolve defendant's counterclaims for breach of contract and violation of the California Uniform Fraudulent Transfer Act. In that regard, litigation as to these remaining claims would continue at the normal pace. Second, defendant argues the facts are complex and disputed, especially with respect to its defenses to breach and its counterclaims. For example, given the need for extensive international discovery, motion practice may be necessary prior to ruling on plaintiffs' claims that defendant breached its contractual obligations. Finally, defendant emphasizes that no need for urgency exists given its view that plaintiffs forfeited their interest in Wright Solar under the insolvency provision.

A speedy hearing under Rule 57 is not warranted under the circumstances. Even accepting plaintiffs' view that their breach claims are relatively straightforward, the Court cannot adjudicate those claims without considering Frontier's defenses to the same. Given that Frontier's defenses largely depend upon vigorously contested issues of fact, a speedy hearing on contractual interpretation alone will not terminate the controversy. *See Allergan*, 2014 WL 4181457, at *4-5 (denying Rule 57 motion for expedited proceedings in part based on the court's concern "that the facts in this case are complex and 'vigorously' disputed," and noting that the ultimate inquiry "is likely a fact-intensive question that would benefit from more than limited discovery.") Plaintiffs' motion under Rule 57 is **DENIED**.

However, the Court finds it appropriate that defendant provide plaintiffs with ongoing disclosures related to Wright Solar during the pendency of this action. Thus, until the Court can hear the action on the merits, Frontier is directed to provide plaintiffs with monthly updates by 5:00 p.m.

PST/PDT on the first day of each month in a format consistent with the disclosures required by section 2.4 of the Omnibus Agreement as restated in the fourth amendment thereto.

### IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion for a preliminary injunction is **DENIED**. Plaintiffs' request for an expedited hearing under Rule 57 is similarly **DENIED**. Until the Court can hear the action on the merits, Frontier is directed to provide plaintiffs with monthly updates by 5:00 p.m. PST/PDT on the first day of each month in a format consistent with those required by section 2.4 of the Omnibus Agreement as restated in the fourth amendment thereto.

This Order terminates Docket Number 21.

**IT IS SO ORDERED.**

Dated: June 16, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**