UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GEC US 1 LLC,** *et al.,* | Case No.: 16-cv-1276 YGR |
| Plaintiffs, | |
| v. | |
| **FRONTIER RENEWABLES, LLC,** *et al.,* | **ORDER ON MOTIONS TO DISMISS; ORDER ON PLAINTIFFS' MOTION TO ENFORCE COMPLIANCE WITH ORDER** |
| Defendants. | |
| **FRONTIER RENEWABLES, LLC,** | |
| Counterclaim Plaintiff, | Re: Dkt. Nos. 85, 87, 89, 90, 91, 93 |
| v. | |
| **ACTIV SOLAR GMBH,** *et al.,* | |
| Counterclaim Defendants. | |

Plaintiffs GEC US 1 LLC, AS (Wright) LLC, and Activ Solar Holdings (US) Inc. (collectively, "plaintiffs") bring this action against defendants Frontier Renewables LLC ("Frontier"), Balduin Hesse, Reinhard Hesse, Frederick Franks, Tom Fitzgerald, and Lance McKinley (collectively, "defendants") arising out of plaintiffs' and Frontier's contractual relationships with respect to their jointly owned venture, Wright Solar, LLC, which was formed to develop a power generation project (the "Wright Project"). Plaintiffs allege that Frontier breached its contractual obligations under the various agreements related to the Wright Project, and that all defendants have improperly asserted control over and ownership of Wright Solar amounting to conversion and civil theft under California law. Frontier asserts counterclaims arising out of alleged breaches of the same agreements against plaintiffs and Activ Solar GmbH, Activ Solar (UK) Ltd., Green Evolution Capital LLP, Colin Bent, Kaveh Ertefai, and Kim Koehler (collectively, "non-plaintiff counterclaim defendants"). Based thereon, plaintiffs and Frontier seek declaratory and injunctive relief resolving

their respective contractual obligations, compensatory and punitive damages, as well as an award of attorneys' fees.

Currently pending before the Court are the parties' motions to dismiss the first amended complaint (Dkt. No. 70, "FAC") and the first amended counterclaims (Dkt. No. 84, "FACC"). Also pending is plaintiffs' motion to enforce compliance with the Court's order requiring ongoing disclosures. Having carefully considered the papers submitted and the pleadings in this action, oral argument held August 30, 2016, and for the reasons discussed below, the Court **ORDERS** as follows:

- Defendants' motion to dismiss the FAC (Dkt. No. 85) is **GRANTED IN PART**;
- Activ Solar GmbH's motion to dismiss the FACC (Dkt. No. 87), the individual counterclaim defendants' motion to dismiss the FACC (Dkt. No. 90), and the UK counterclaim defendants' motion to dismiss the FACC (Dkt. No. 91) are **GRANTED** for lack of personal jurisdiction **WITH LEAVE TO AMEND**;
- Plaintiffs' motion to dismiss the FACC (Dkt. No. 89) is **GRANTED IN PART**; and
- Plaintiffs' motion to enforce compliance with Court order (Dkt. No. 93) is **DENIED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This case centers on the parties' alleged breaches of their respective obligations related to the Wright Project. Plaintiffs claim that Frontier began to breach its contractual obligations in November 2015. (FAC ¶ 54.) Frontier failed to provide status updates to plaintiffs regarding the Wright Project (*id.*) and denied plaintiffs access to Wright Solar's books and records (*id.* ¶¶ 39–50). Frontier does not dispute its failure to comply with the contractual provisions cited by plaintiffs in their complaint. Frontier, however, asserts it no longer has such obligations because plaintiffs have failed to make required payments, constituting material breaches of the agreements (FACC ¶¶ 120–27), and plaintiffs otherwise have defaulted by virtue of their parent company's insolvency proceedings in Austria (*id.* ¶¶ 95–99). Frontier takes the position that, under the terms of the agreements, it is now the sole owner of Wright Solar as a result of the Austrian insolvency proceedings. (*Id.*) Plaintiffs vehemently disagree, alleging that defendants' assertion of complete ownership amounts to conversion and civil theft. (FAC ¶¶ 89–103.)

The Court now recounts the salient allegations relevant to the instant motions:

**A.  The Parties to this Litigation**

Plaintiffs are three related entities: GEC US 1, LLC ("GEC"), AS (Wright) LLC ("AS (Wright)"), and Activ Solar Holdings (US) Inc. ("ASH").  Non-plaintiff counterclaim defendants include three entities related to plaintiffs: Activ Solar GmbH ("Activ GmbH"), Activ Solar UK, Ltd. ("Activ UK"), and Green Evolution Capital, LLP ("Green Evolution").  Additionally, Frontier brings certain counterclaims against three officers and/or representatives of the counterclaim defendant entities in their individual capacities: Kaveh Ertefai, Colin Bent, and Kim Koehler (the "individual counterclaim defendants," collectively).  (FACC ¶¶ 15–17.)

Given the import of the relationships among the counterclaim defendants to the motions to dismiss, the Court provides the below charts reflecting the relationships as alleged in the FACC.

*Plaintiffs*:[1]

| Full Name | Short Name | Relationships to Other Parties |
|---|---|---|
| GEC US 1, LLC | GEC | • Wholly owned by and sole member is Green Evolution<br>• Wholly owns and is sole managing member of AS (Wright) since asset transfer[2] |
| AS (Wright) LLC | AS (Wright) | • Wholly owned by and sole member is GEC since asset transfer<br>• Previously wholly owned by and sole member was ASH prior to asset transfer |
| Activ Solar Holdings (US) Inc. | ASH | • Wholly owned by and sole shareholder is Activ GmbH<br>• Previously wholly owned and was sole member of AS (Wright) prior to asset transfer |

*Non-Plaintiff Counterclaim Defendants*:[3]

| Full Name | Short Name | Relationship to Other Parties |
|---|---|---|
| Activ Solar GmbH | Activ GmbH | • Wholly owns and is sole shareholder of ASH<br>• Wholly owns and is sole shareholder of Activ UK |
| Activ Solar (UK) Ltd. | Activ UK | • Wholly owned by Activ GmbH<br>• Partner in and owns 29.9% of Green Evolution |

---

[1]  *See* FACC ¶¶ 9, 11, 43, 67.

[2]  The asset transfer references the allegation that, on or around December 2015, ASH transferred all of its assets, including its 100% interest in AS (Wright), to GEC.  (FACC ¶¶ 43, 67.)

[3]  *See* FACC ¶¶ 9, 11, 13, 15–17.

United States District Court
Northern District of California

United States District Court
Northern District of California

| Green Evolution Capital LLP | Green Evolution | • Partners are Activ UK (29.9% owner) and Kim Koehler in trust for Activ (70.1% owner) |
| | | • Wholly owns and is sole member of GEC |
| Kaveh Ertefai | Ertefai | • CEO of Activ GmbH |
| | | • President of ASH |
| | | • Officer of GEC |
| | | • Officer of AS (Wright) |
| | | • Officer of Activ UK |
| Colin Bent | Bent | • Vice President of GEC |
| | | • Authorized representative of AS (Wright) |
| Kim Koehler | Koehler | • Partner in and owns 70.1% interest in Green Evolution, held in trust for Activ |

*Current Corporate Structure*:[4]



---

[4] *See* FACC ¶¶ 9, 11, 13, 15–17, 43, 67.

1   As discussed in more detail in Section IV.B, below, Frontier alleges that plaintiffs and non-

2   plaintiff counterclaim defendants are all alter egos of each other.  (FACC ¶¶ 85–94.)

3   Defendant and counterclaimant Frontier is a limited liability company "engaged in utility-

4   scale solar [PV] power plant developments in California."  (FACC ¶ 19.)  In March 2012, Frontier

5   formed Wright Solar as its sole member to develop the Wright Project.  (*Id.* ¶ 22.)[5]  In April 2012, AS

6   (Wright) through its then-managing member ASH entered into three agreements with Frontier: (1) a

7   membership interest purchase agreement ("MIPCA") by which Frontier sold seventy-five (75)

8   percent of its interest in Wright Solar to AS (Wright); (2) an LLC Agreement, *inter alia*, appointing

9   Frontier as the initial manager of Wright Solar and vesting decision-making authority in the majority

10  owner; and (3) a development services agreement ("DSA") setting forth the development services

11  Frontier would provide to Wright Solar as its manager.  (*See* FAC, Exhs. 3, 2, 4, respectively; FACC,

12  Exhs. A, B, C, respectively.)  The only agreement between Frontier and Activ GmbH – the alleged

13  ultimate parent company of all counterclaim defendants – related to the Wright Project is a May 2013

14  indemnity agreement (the "indemnity agreement").  (FACC ¶ 30.)  Pursuant to the indemnity

15  agreement, ASH, AS (Wright), and Activ GmbH each separately indemnified Frontier for a multi-

16  million dollar bond necessary to develop the Wright Project.  (*Id.* ¶ 31.)

17  Defendants Balduin Hesse, Reinhard Hesse, Frederick Franks, Tom Fitzgerald, and Lance

18  McKinley (the "individual defendants") are members and officers of Frontier.  (FAC ¶¶ 9–13.)

19  Specifically, the individual defendants are Frontier's chief executive officer, chief developer, chief

20  financial officer, vice president of development, and general counsel, respectively.  (*Id.*)

21  **B.  Activ GmbH Insolvency Proceedings Following Asset Transfer**

22  As mentioned above, ASH transferred to GEC its 100% interest in AS (Wright) on or around

23  December 2015.  (FACC ¶ 43.)  Frontier claims that the transfer from ASH to GEC was fraudulently

24  performed to evade counterclaim defendants' creditors, including Frontier.  (*Id.*)  Frontier was

25

26

27      [5]  The Court recognizes an inconsistency insofar as the FAC states that defendant formed Wright Solar in March 2011, not March 2012.  (FAC ¶ 18.)  This same conflict was present in the

28  parties' original pleadings.  (*See* Dkt. No. 66 at n. 1.)

informed of the proposed transfer in November 2015.  (*Id*. ¶ 46.)  The circumstances as alleged by Frontier are as follows:

- November 11, 2015 – Bent emails Balduin Hesse (Frontier CEO) with details of a proposed transfer agreement.  Bent represents that, despite the sale, "[t]he transaction team will remain the same."  (*Id*. ¶¶ 46–47.)

- December 15, 2015 – Balduin and Reinhard Hesse, on behalf of Frontier, met with Ertefai and Bent in Beverly Hills, California to discuss the proposed transfer.  (*Id*. ¶ 50.)  The meeting was arranged at the request and proposal of Ertefai.  (*Id*. ¶ 49.)  At the meeting, Ertefai represented the transfer had not yet occurred, and that when it did, it would not be a "true sale."  (*Id*. ¶ 51.)  The Hesses voiced opposition to the transfer but agreed to have their counsel review materials provided by Bent or Ertefai.  (*Id*. ¶ 52.)

- December 17, 2015 – Bent emailed Balduin Hesse summarizing the terms of the proposed transfer.  (*Id*. ¶ 53.)  Notably, Bent represented that "while [ASH] will have little in way of assets under [the] proposal, **Frontier will still have recourse to [Activ] GmbH and the assets housed in AS (Wright).  Our view is that the proposed transfer to GEC leaves Frontier neutral in terms of risk related to the surety bonds and related indemnification**."  (*Id*.)  In that same email, Bent represented that "**GEC is also willing to become party to the indemnity agreements if necessary.**"  (*Id*. [emphasis supplied].)

- December 29, 2015 – ASH transferred its entire interest in AS (Wright) (and the three other project entities) to GEC without Frontier's knowledge.  (*Id*. ¶ 61.)  However, the "Assignment of Equity Interests Agreement" between ASH and GEC states that the purchase and sale agreement was signed November 6, 2015.  (*Id*. ¶ 62.)

- January 19, 2016 – Bent called Balduin Hesse to alert him that the transfer was made at the end of 2015.  (*Id*. ¶ 65.)  Bent allegedly stated that the $4.1 million purchase price – a combination of cash payments and debt assumption – paid by GEC for ASH's assets was below market value.  (*Id*. ¶¶ 66–67.)

Frontier alleges that the transfer of assets from ASH to GEC was in anticipation of Activ GmbH initiating insolvency proceedings in the European Union.  Specifically, in October 2015, an

United States District Court

Northern District of California

arbitrator awarded €57 million against Activ GmbH in an unrelated dispute.  (*Id*. ¶ 75.)  Although Activ GmbH did not file insolvency and reorganization proceedings until February 2016, Frontier claims that all counterclaim defendants anticipated Activ GmbH doing so when they allegedly directed the asset transfer from ASH to GEC in December 2015.  (*Id*. ¶¶ 74–75.)  Frontier further claims that public filings show that neither GEC nor its parent company, Green Evolution, had the assets or capital to pay fair market value for ASH's assets.  (*Id*. ¶¶ 76–80.)  Thus, Frontier concludes that ASH assigned its interest in AS (Wright) to GEC "at well below the fair market value [to] shield assets fraudulently from Activ Solar GmbH's creditors."  (*Id*. ¶ 84.)

### C.  The Instant Dispute

Previously, in June 2014, Frontier sued ASH and AS (Wright) for their alleged failure to make payments under the MIPCA and LLC Agreement.  (FAC ¶¶ 26–28; FACC ¶¶ 33–36.)  Frontier dismissed that lawsuit in July 2014 when the parties entered into an omnibus agreement and waiver (the "Omnibus Agreement").  (FAC ¶¶ 29–33; FACC ¶¶ 33–36.)  The Omnibus Agreement reflects the parties' desire to cooperate and enter into a joint sale process to sell all membership interests in Wright Solar.[6]  (*See* FAC, Exh. 2.)  Under the Omnibus Agreement, Frontier remained the manager of the Wright Project and plaintiffs were to pay Frontier a monthly development and management fee until the sale of the Wright Project.  (*Id.* at 4–6.)  The parties thereafter extended the joint sale period several times through amendments to the Omnibus Agreement.  (FAC ¶ 32; FACC ¶ 39.)  The fourth amendment to the Omnibus Agreement revises the services fee plaintiffs must pay defendant during the joint sale period as extended thereby.  (*See* FAC, Exh. 6.)

The instant dispute arose out of the parties' differing views on the bounds of plaintiffs' ongoing payment obligations as defined in the fourth amendment, paragraph 2.2(b).  Frontier alleges that plaintiffs have defaulted on the Omnibus Agreement by failing to pay monthly development services fees since September 2015.  (FACC ¶¶ 39–40.)  Frontier sent plaintiffs a notice of default outlining their failure to (i) pay defendant the $39,000 monthly services fee and (ii) reimburse Frontier for expenses it incurred on behalf of Wright Solar.  (*Id*. ¶¶ 41–42.)  As of the filing of the

---

[6] The Omnibus Agreement also addresses other joint ventures and projects not at issue in this litigation.  (*See* FAC, Exh. 2.)

FACC, Frontier alleges plaintiffs owe at least $370,500 under the fourth amendment. (*Id.* ¶ 40.) By contrast, plaintiffs allege they have made all required payments because the fourth amendment required service fee payments to Frontier only for the months of May and June 2015. (FAC ¶ 34.) Plaintiffs do not explain why they nonetheless made the payments through September 2015.

On February 10, 2016, the alleged parent company of plaintiffs, and a non-plaintiff counterclaim defendant in this action, Activ GmbH, initiated insolvency and reorganization proceedings in the European Union. (FACC ¶ 97.) Frontier alleges the insolvency proceedings qualify as an "Insolvency Event" as defined in the LLC Agreement, rendering plaintiffs a "Defaulting Member" under the MIPCA. (*Id.* ¶¶ 95–99.) Frontier further alleges that the LLC Agreement section 11.3(b) allows it, as the non-defaulting member of Wright Solar, to take possession of AS (Wright)'s seventy-five (75) percent interest in Wright Solar. (*Id.*) As a result of these disputes Frontier has effectively shut plaintiffs out of Wright Solar. (*See* FAC ¶¶ 39–55.) Frontier alleges that plaintiffs, in response to the shut-out, have fraudulently attempted to access Wright Solar's QuickBooks account and a router maintained by Frontier. (FACC ¶¶ 100–19.) Plaintiffs vigorously oppose Frontier's position that they have defaulted under the agreements. (*See* FAC ¶¶ 34, 65–72.)

Plaintiffs filed the original complaint seeking declaratory and injunctive relief against Frontier for its alleged ongoing breaches of obligations to plaintiffs beginning in November 2015. (Dkt. No. 1, ¶¶ 46-47.) In response, Frontier brought counterclaims against counterclaim defendants for the alleged fraudulent transfer of assets among their related entities and for fraud and civil theft in connection therewith. (Dkt. No. 25.) Plaintiffs quickly moved for a preliminary injunction requiring specific performance by Frontier of its obligations under the various contracts. (Dkt. No. 21.) The Court denied plaintiffs' motion for failure to establish they were entitled to specific performance and failure to establish irreparable harm absent injunctive relief, but did order certain monthly disclosures by Frontier to plaintiffs during the pendency of the litigation. (Dkt. No. 66.) Following the Court's denial of plaintiffs' motion for preliminary injunction, plaintiffs amended their complaint to bring damages claims against Frontier and newly named individual defendants for conversion and civil theft based on defendants' position that Frontier owns 100% of Wright Solar. (*See* FAC, Counts Three and Four.) Frontier's amended counterclaims followed. (*See generally* FACC.)

All parties now move – in part or in whole – to dismiss the claims against them in the FAC and FACC.  In addition, plaintiffs move to enforce the Court's order requiring monthly disclosures. The Court addresses the six[7] pending motions below.

## II.   APPLICABLE STANDARDS OF REVIEW

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original).  Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)).  The Court will not assume facts not alleged, nor will it draw unwarranted inferences.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Additionally, Rule 9 establishes a heightened pleading standard for allegations of fraud. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.");  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (to be alleged with particularity under Rule 9(b), a plaintiff must allege "the 'who, what, when, where, and how'" of the alleged fraudulent conduct); *see also Tatung Co. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036, 1060 (C.D. Cal. 2014) (applying Rule 9(b)'s heightened pleading standard to state law claims brought in federal court).  Moreover, where a plaintiff alleges "a unified course of fraudulent conduct and rel[ies]

---

[7]  Counterclaim defendants filed four separate motions to dismiss the FACC.  Their motions, Frontier's responses, and the movants' replies largely overlap in substance and form.  This duplicative approach made the Court's review unnecessarily cumbersome.  In fact, the Court found numerous "copy and paste" errors in the parties' briefing on these motions – the apparent result of the unreasonable volume of briefing required by the separate filings.  To the extent that Frontier files second amended counterclaims, any challenges by non-plaintiff counterclaim defendants must be coordinated such that only one comprehensive motion to dismiss may be filed with the Court.

entirely on that course of conduct as the basis of a claim[,] . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103–04, 1106 (9th Cir. 2003) (holding "the circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct [alleged] so that they can defend against the charge and not just deny that they have done anything wrong") (internal quotations and citations omitted).

A motion to dismiss pursuant to Rule 12(b)(1) is a challenge to the court's subject matter jurisdiction. "Federal courts are courts of limited jurisdiction," and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins.Co. of Am.*, 511 U.S. 375, 377 (1994). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *Id.* A challenge pursuant to Rule 12(b)(1) may be facial or factual. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir.2000). In a facial attack, the jurisdictional challenge is confined to the allegations pled in the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). The challenger asserts that the allegations in the complaint are insufficient "on their face" to invoke federal jurisdiction. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004). To resolve this challenge, the court assumes the allegations in the complaint are true and draws all reasonable inferences in favor of the party opposing dismissal. *See Wolfe*, 392 F.3d at 362.

A motion under Federal Rule of Civil Procedure 12(b)(2) challenges a court's exercise of personal jurisdiction over a defendant. Where the motion to dismiss is based on written submissions—rather than an evidentiary hearing—the plaintiff need only make a *prima facie* showing of jurisdiction. *Schwarzenneger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). A plaintiff makes a "*prima facie*" showing by producing admissible evidence which, if believed, would be sufficient to establish the existence of personal jurisdiction. *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In deciding whether such a showing has been made, a district court must accept as true the uncontroverted allegations in the complaint and conflicts between facts contained in the parties' affidavits must be resolved in a plaintiff's favor. *AT&T v. Compagnie Bruxelles Lambert*, 94

1    F.3d 586, 588 (9th Cir. 1996).

2        Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon

3    which relief may be granted.  Dismissal for failure to state a claim under Federal Rule of Civil

4    Procedure 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient

5    facts alleged under a cognizable legal theory."  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242

6    (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).  The

7    complaint must plead "enough facts to state a claim [for] relief that is plausible on its face."

8    *Twombly*, 550 U.S. at 570.  A claim is plausible on its face "when the plaintiff pleads factual content

9    that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

10   alleged."  *Iqbal*, 556 U.S. at 678.  If the facts alleged do not support a reasonable inference of liability

11   stronger than a mere possibility, the claim must be dismissed.  *Id.* at 678-79; *see also In re Gilead*

12   *Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (a court is not required to accept as true

13   "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

**III.    DEFENDANTS' MOTION TO DISMISS THE FAC**

14

15       The Court first addresses defendants' single motion under Rule 12(b)(6) to dismiss the FAC

16   in part.  (Dkt. No. 85.)  Therein, defendants move to dismiss the claims for conversion (Count Three)

17   and civil theft (Count Four) as not properly pled.  Both counts are alleged by all plaintiffs against all

18   defendants.  Because plaintiffs' claims for conversion and civil theft involve allegations of fraud, the

19   Court applies the heightened pleading standard of particularity as required by to Rule 9(b).

**A. Conversion (Count Three)**

20

21       Plaintiffs' claim for conversion centers on Frontier's position that AS (Wright) forfeited its

22   75% percent interest when Activ GmbH initiated insolvency proceedings.  (FAC ¶¶ 89–93.)

23   Plaintiffs allege that Frontier has wrongfully converted AS (Wright)'s interest in the Wright Project

24   by "assuming control over Wright Solar and actually excluding AS (Wright) without a judicial

25   determination that Frontier was entitled to more than its contractual minority share in Wright Solar . .

26   . ."  (*Id.* ¶ 93.)  Specifically, Frontier has assumed control over Wright Solar by "disregarding AS

27   (Wright)'s ability to share in Wright Solar's assets and profits."  (*Id.* ¶ 91.)

28

California defines the tort of conversion as the "wrongful exercise of dominion over the property of another." *Welco Electronics, Inc. v. Mora*, 223 Cal.App.4th 202, 208 (2014) (quoting *Los Angeles Federal Credit Union v. Madatyan*, 209 Cal.App.4th 1383, 1387 (2012)); *Gruber v. Pacific States Sav. & Loan Co.*, 13 Cal.2d 144, 148 (1939) ("conversion is any action of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein"). The three elements of a conversion claim are: "[i] the plaintiff's ownership or right to possession of the property; [ii] the defendant's conversion by a wrongful act or disposition of [plaintiff's] property rights; and [iii] damages." *Burlesci v. Petersen*, 68 Cal.App.4th 1062, 1066 (1998). Neither knowledge nor intent of the defendant is germane to the cause of action. *Id.* "Therefore, questions of the defendant's good faith, lack of knowledge, and motive are ordinarily immaterial." *Id.*

Defendants argue four grounds for dismissal, namely: (1) whether plaintiffs GEC and ASH can even assert such a claim; and the failure to plead that (2) the individual defendants converted property of plaintiffs; (3) defendants divested AS (Wright) of an ownership interest that is subject to a conversion claim (element one); and (4) damages (element three). The Court addresses each:

### 1. Proper Plaintiff to Bring Conversion Claim

As a threshold issue, defendants argue the conversion claim fails as to plaintiffs GEC and ASH because neither entity owns the allegedly converted interest in Wright Solar. The Court agrees. The FAC alleges that AS (Wright) holds the 75% interest in Wright Solar and thus cannot allege that defendants converted any property interest of GEC or ASH. At oral argument, plaintiffs conceded that neither GEC nor ASH can assert this claim. Defendants' motion on this ground is **GRANTED**.

### 2. Allegations against Individual Defendants

With respect to whether the FAC pleads sufficient allegations against the individual defendants, AS (Wright) argues that the allegations against the individual defendants, taken as true, establish that the individual defendants are linked to Frontier's conversion of AS (Wright)'s assets because the individual defendants: (a) directly control and participate in all actions taken by Frontier by virtue of their respective positions within Frontier; (b) had advance knowledge of Frontier's obligations under the various agreements; (c) made statements to this Court regarding their claim to

Wright Solar; and (d) will directly benefit from Frontier's conversion because their membership interests in Wright Solar will increase.  (Dkt. No. 88 at 12:24–13:4 [citing FAC ¶¶ 68–72, 90–93].)

Rule 8(a) requires that AS (Wright) do more than offer "[b]are assertions . . . [which] amount to nothing more than a formulaic recitation of the elements" for their claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The totality of the allegations against the individual defendants in their individual, as opposed to their corporate, capacities is conclusory.  For example, the FAC does not allege that the individual defendants themselves made any particular decision(s) to exert control over Wright Solar improperly.  Nor does it allege that the individual defendants personally possess the converted property interest.  Indeed, the only specific allegation in the FAC against any individual defendant to support the conversion claim is easily undermined.  The FAC alleges that Balduin Hesse "filed a declaration in this action that proclaims his decision that Frontier was 'entitled to take possession of the remaining 75% interest in Wright Solar, previously owned by AS (Wright).'"  (FAC ¶ 70.)  The actual declaration, however, states that "*Frontier* …was and is entitled …" to take possession of Wright Solar.  (Dkt. No. 32 ¶ 52 [emphasis supplied].)  The declaration says nothing of any personal decision by Balduin Hesse.  Thus, the FAC does not state a plausible claim against any of the individual defendants.  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (a court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").  The motion is **GRANTED** as to the individual defendants.

### 3.  *Allegations of Control of Property Interest (Element One)*

Defendants next argue insufficient allegations as to element one, *i.e.* that Frontier asserted dominion or control over AS (Wright)'s property in a manner inconsistent with its rights thereto. Here, the FAC alleges that Frontier converted AS (Wright)'s 75% majority interest in Wright Solar by: claiming Frontier wholly owns Wright Solar when AS (Wright) still had the right to possess its interest; disregarding AS (Wright)'s right to share in Wright Solar's assets and profits; excluding AS (Wright) from access to Wright Solar's books and records; and excluding AS (Wright) from all decisions related to Wright Solar.  (FAC ¶¶ 89–93.)  This sates a proper claim.  Under California law, one partner can be liable to his co-partner for conversion of jointly owned business property, including intangible property such as corporate shares.  *See Oakdale Vill. Group v. Daniel Fong*, 43

Cal.App.4th 539, 546 (1996) (a partner can be liable for the conversion of a portion of partnership shares which does not belong to them); *Am. Mortg. Corp. v. Fed. Home Loan Mortg. Corp.*, 75 F.3d 1401, 1411 (9th Cir. 1996) (collecting California cases for the proposition that "a claim of version will lie even if the alleged converted property is intangible").

Frontier's argument that AS (Wright) must allege that Frontier prevented or refused to allow the transfer of jointly owned assets is misplaced.  Frontier cites cases allowing conversion claims in those circumstances, but contrary to Frontier's assertion, its authority does not limit conversion of business interests to such claims.  *See Mears v. Crocker First Nat'l Bank of San Francisco*, 84 Cal.App.2d 637, 644–45 (1948) (a claim for conversion is pled "when, according to the complaint defendant transfer agent become a party to an agreement which very effectively limited plaintiff's right to dispose of his stock when, where and how he chose, and then refused to convert his stock [as] required under the agreement"); *Ralston v. Bank of Cal.*, 112 Cal. 208, 213 (1896) (claim for conversion lies where defendant bank refused to allow a transfer of plaintiff's shares upon defendant's books).  Indeed, an allegation that a member of a partnership or joint venture has been deprived of a share of the business's assets and profits can form the basis of a conversion claim.  *Second Measure, Inc. v. Kim*, 143 F.3d 961, 980–81 (N.D. Cal. 2015) ("business assets and profits [are] the proper subject of a claim of conversion").  Moreover, it is well-established that "[o]ne of the incidents of ownership is the free and unhampered right to dispose of property without limitations imposed by strangers to title."  *Mears*, 84 Cal.App.2d at 644.  Frontier's lock-out of AS (Wright) from Wright Solar, as well as Frontier's position that AS (Wright) no longer has any ownership interest Wright Solar, at a minimum has hindered AS (Wright)'s ability to market and sell its interest.

AS (Wright) therefore alleges that Frontier has misappropriated property which is subject to a conversion claim under California law.  Defendants' motion on this ground is **DENIED**.

### 4.  Allegations of Damages (Element Three)

Lastly, Frontier argues that the conversion claim must be dismissed because it pleads only future speculative harm as a result of Frontier's alleged conversion.  Frontier's argument fails to persuade.  AS (Wright) may recover "[t]he value of the property at the time of the conversion" with interest, or, alternatively, "an amount sufficient to indemnify the party injured for the loss which is

the natural, reasonable and proximate result of the wrongful act complained of and which a proper degree of prudence on his part would not have averted."  Cal. Civ. Code § 3336.  If successful, AS (Wright) may additionally recover damages in the form of "fair compensation for the time and money properly expended in pursuit of the property."  *Id.*; *see also Virtanen v. O'Connell*, 140 Cal.App.4th 688, 708 (2006) (discussing the "normal measure of damages for conversion" provided for in Cal. Civ. Code § 3336).

Frontier relies on *Baldwin v. Marina City Properties, Inc.*, 79 Cal.App.3d 393, 411–12 (1978), for the proposition that speculative harm "is not injurious."  (Dkt. No. 85 at 13:27–28.)  *Baldwin*, however, was decided on the narrow grounds that a plaintiff's total failure to allege damages is fatal to a conversion claim.  *Id.* at 412 (sustaining demurrer where plaintiffs sought "compensatory damages in an unspecified sum without stating either of the alternative measures of damage required by section 3336 of the Civil Code").  By contrast, AS (Wright) specifies its damages as "including but not limited to the value of AS (Wright)'s membership interests, investments in Wright Solar and all assets and profits it is entitled to as majority member of Wright Solar."  (FAC ¶ 94.)  While AS (Wright) does not state a specific dollar sum, its alleged 75% interest in Wright Solar can be calculated in terms of monetary value.  (*See* Dkt. No. 66 at 6:14–7:28) (adopting Frontier's view that plaintiffs' losses are "compensable at law, *i.e.* with money damages.")  These allegations are sufficient under Section 3336 and *Baldwin*.  Defendants' motion in this regard is **DENIED**.

In conclusion, defendants' motion to dismiss the conversion claim (Count Three) is **GRANTED IN PART**.  The claim is **DISMISSED WITH PREJUDICE** with respect to plaintiffs GEC and ASH's assertion of a conversion claim.  The claim is further **DISMISSED** insofar as a claim is not plausibly alleged against the individual defendants; the Court dismisses the individual defendants from the conversion claim **WITHOUT PREJUDICE** to plaintiffs later moving for leave to amend.[8]  Defendants' motion to dismiss the conversion claim against Frontier is otherwise **DENIED**.

///

///

---

[8]  At oral argument, counsel for plaintiffs represented he is unaware of additional facts to be alleged against the individual defendants.  The Court therefore does not give plaintiffs leave to amend at this time.

15

### B.  Civil Theft (Count Four)

A claim for civil theft in California ultimately rests on whether a plaintiff establishes that a defendant committed theft as defined by California Penal Code section 484.  *See Bell v. Feibush*, 212 Cal.App.4th 1041, 1049 (2013).[9]  Defendants move to dismiss the civil theft claim, arguing that plaintiffs fail to allege the specific intent required by the statute.[10]

To establish theft under Section 484, a defendant must have the specific "felonious" intent to deprive the owner of his or her property.  *See People v. Avery*, 27 Cal.4th 49, 58 (2002) (Section 484 adopts the common law requirement for specific intent to "*permanently* deprive another of property" or "temporarily but for an unreasonable time so as to deprive the person of a major portion of its value or enjoyment").  The requisite intent is a specific intent to steal, and cannot be established if a defendant has a "good faith claim of right" to possession.  *People v. Davis*, 19 Cal.4th 301, 305 (1998).  Here, the FAC does not allege the requisite specific intent.  To the contrary, the FAC alleges that defendants do *not* have a felonious intent: "Frontier has taken the position that it owns *all* interests in Wright Solar, and that AS (Wright) no longer has any membership interests in Wright Solar."  (FAC ¶ 63 [emphasis in original].)  The allegations in the FAC establish only that defendants misconstrue Frontier's ownership of Wright Solar and that Frontier has publicly taken the position that it owns 100% of Wright Solar.  Without more, allowing this claim to proceed on these allegations would sanction the use of the penal code to redress ordinary business disputes over ownership interests – an untenable result.

Absent adequate allegations of the requisite specific intent, the FAC does not state a plausible claim for civil theft.  Defendants' motion to dismiss plaintiffs' claim for civil theft (Count Four) is

---

[9]  Cal. Pen. Code section 496(a) criminalizes buying or receiving "any property that has been stolen or that has been obtained in any manner constituting theft [under section 484]."  Under section 496(c), an individual may bring a private cause of action for any violation of section 496(a).  *See* Cal. Pen. Code § 496(c).  Thus, a violation of section 484 can give rise to a private right of action under section 496(c).  *See Bell, supra.*

[10]  Finding specific intent is not plausibly alleged, the Court does not reach defendants' argument with respect to the requisite "control" necessary to state a claim for civil theft.

16

**GRANTED**. The Court dismisses the civil theft claim **WITHOUT PREJUDICE** to plaintiffs later moving for leave to plead the claim.[11]

### IV.   NON-PLAINTIFF COUNTERCLAIM DEFENDANTS' MOTIONS TO DISMISS THE FACC

Non-plaintiff counterclaim defendants[12] move to dismiss Frontier's counterclaims against them for lack of personal jurisdiction under Rule 12(b)(2).[13]   A motion under Rule 12(b)(2) challenges a court's exercise of personal jurisdiction over a defendant.   Frontier argues the Court can exercise personal jurisdiction over the non-plaintiff counterclaim defendants on two alternate grounds, namely because they are: (A) independently subject to the specific jurisdiction of this Court; and (B) alter egos of plaintiffs (and each other).   The Court addresses each:

#### A.   Specific jurisdiction: Contacts with California

Frontier first asserts the non-plaintiff counterclaim defendants are subject to the specific jurisdiction of the Court because they committed fraudulent acts in and directed their fraudulent acts toward California.   California law[14] allows for the exercise of "jurisdiction on any basis not inconsistent with the Constitution of [California] or of the United States."   Cal. Code Civ. Proc. § 410.10.   Due process requires that the non-resident defendant have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice . . . ."   *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted).   "In judging minimum contacts, a court properly focuses on 'the relationship among the

---

[11]   At oral argument, counsel for plaintiffs represented he needed more time to determine whether additional facts exist as to intent.   Plaintiffs may later file a motion seeking leave to amend this claim upon a showing good cause.

[12]   Although plaintiffs are named as counterclaim defendants, those entities (GEC, ASH, and AS (Wright)) do not challenge personal jurisdiction.

[13]   Non-plaintiff counterclaim defendants further move to dismiss based on lack of subject matter jurisdiction under Rule 12(b)(2) and for failure to state a claim under Rule 12(b)(6).   Finding at the outset that Frontier has not shown that the Court may exercise personal jurisdiction over the non-plaintiff counterclaim defendants, the Court does not reach these alternate bases for dismissal.

[14]   Where no federal statute governs personal jurisdiction, the Court applies the law of the state in which it sits; here, California law applies.   *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

United States District Court
Northern District of California

defendant, the forum, and the litigation.'" *Calder v. Jones,* 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).  Personal jurisdiction may be either general or specific. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

Frontier does not argue general jurisdiction but rather relies exclusively on specific jurisdiction.  Specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotations omitted).  Said otherwise, personal jurisdiction requires that the Court evaluate whether the specific activity giving rise to the causes of action is sufficiently related to the forum state.  *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 (1952); *Hanson v. Denckla*, 357 U.S. 235, 250-53 (1958).  The Ninth Circuit applies a three-prong test to determine whether a non-resident's activities are sufficiently related to the forum state to establish specific personal jurisdiction:

> (1)    The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2)    the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3)    the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).  The counterclaim plaintiff (*i.e.*, Frontier) bears the burden of demonstrating the first two prongs.  *Id.*; *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008).  If Frontier fails to satisfy either of these prongs, then personal jurisdiction is not established in the forum state.  *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1555 (9th Cir. 2006).  If Frontier carries this burden, then "the [counterclaim] defendant[s] must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto*, 539 F.3d at 1016. (citing *Schwarzenegger*, 374 F.3d at 802).

///

Where, as here, the motion to dismiss is based on written submissions—rather than an evidentiary hearing—Frontier need only make a *prima facie* showing of jurisdiction with admissible evidence. *Schwarzenneger*, 374 F.3d at 800; *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In evaluating the proffer, the Court must accept as true the uncontroverted allegations in the FACC and conflicts between facts contained in the parties' affidavits must be resolved in Frontier's favor. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

The Court now addresses the jurisdictional showing as to each non-plaintiff counterclaim defendant. As discussed below, Frontier fails to produce evidence of sufficient contacts under prong one. The Court thus declines to address whether the claims arise out of the forum-related contacts (prong two) or whether the exercise of jurisdiction would be reasonable (prong three).

### 1. Counterclaim Defendant Activ GmbH

With respect to Activ GmbH, the allegations as to specific jurisdiction fall in two categories: (i) fraudulent conduct directed at Frontier in California by and through its CEO Kevah Ertefai and employee Colin Bent, and (ii) the May 2013 indemnity agreement. (FACC ¶¶ 50–52.) As to the first, Ertefai and Bent traveled to California in December 2015 to discuss with representatives of Frontier the proposed asset transfer of AS (Wright) from ASH to GEC. (*Id.*) Activ GmbH responds that (as Frontier emphasizes) Ertefai was also president of ASH and an officer of Activ UK and GEC when he traveled to California to meet with Frontier. The Court reads the allegations to be that Ertefai was traveling in his capacity as a representative of ASH and GEC, the parties actually involved in the asset transfer, and not on behalf of ASH's parent Activ GmbH. (*See* FACC ¶¶ 49–51.) This comports with the "well established principle [of corporate law] that directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership." *United States v. Bestfoods*, 524 U.S. 51, 69 (1998) (alteration in original). Absent alter ego, "courts generally presume that directors are wearing their 'subsidiary hats' and not their 'parent hats' when acting for the subsidiary . . . ." *Id.* at 69–70 (internal quotations omitted). Based on the allegations, Frontier has not shown that Ertefai was wearing his "parent hat" at the meeting in California. At best the FACC alleges one trip to California by a corporate officer. Yet Frontier provides no authority that this single contact by a corporate officer is sufficient to establish

personal jurisdiction over the parent entity.

Next, Frontier relies on the May 2013 indemnity agreement by which Activ GmbH indemnified Frontier on a multi-million dollar bond. It is true that "[a] single forum state contact can support jurisdiction," but that is only appropriate where "the cause of action . . . arise[s] out of that particular purposeful contact of the [counterclaim] defendant with the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (certain alterations in original) (quoting *Lake*, 817 F.2d at 1421). Frontier stresses that Activ GmbH's signature on the indemnity agreement was critical to Frontier. The indemnity gave assurances to Frontier – an entity much smaller than Activ GmbH – that it would not be left on the hook for the multi-million dollar bond should the Wright Project not live up to expectations. However, Frontier has not sued on the indemnity agreement and does not bring claims that "arise out of" the indemnity agreement. *Id.* Frontier is simply concerned that Activ GmbH may default but makes no claim arising out of the indemnity agreement itself. In that regard, the indemnity agreement is not "directly related" to this litigation such that specific jurisdiction over Activ GmbH would be appropriate. *Id.*

In sum, Frontier has not established that the Court has specific jurisdiction over Activ GmbH. Frontier's arguments largely go to alter ego, discussed more fully in Section IV.B, below.

### 2. *The UK Counterclaim Defendants*

The contacts with respect to Activ UK and Green Evolution (collectively, the "UK counterclaim defendants") are even more attenuated than those allegedly tying Activ GmbH to California. Activ UK's alleged contacts are limited to its officer Kevah Ertefai engaging in fraudulent conduct directed at Frontier in California when he traveled to meet with Frontier's officers. (FACC ¶¶ 50–52.) Again, at most, these allegations establish that a representative of Activ UK traveled to California on one occasion. And, Frontier fails to allege that Ertefai traveled to California on behalf of Activ UK itself – rather than on behalf of one of Activ UK's alleged alter ego entities.

The alleged jurisdictional contact by Green Evolution is limited to Frontier's allegation that Green Evolution perpetuated the alleged fraudulent transfer of AS (Wright) from ASH to GEC by and through its partner Kim Koehler who signed the document effectuating the transfer. (*Id.* ¶ 91.) That a representative of Green Evolution signed a single document related to Wright Solar is not adequate.

United States District Court
Northern District of California

Again, Frontier does not make any showing that Koehler signed the document in his role as a partner in Green Evolution rather than in connection with Green Evolution's subsidiary GEC. *See Bestfoods*, 524 U.S. at 69–70 (directors presumed to act on behalf of subsidiary not parent entity). Nor does Frontier allege that this signature effectuating the transfer was executed in California.

Frontier has not satisfied its obligation to make a *prima facie* showing that the UK counterclaim defendants "purposefully direct[ed their] activities" to California. *Schwarzenegger*, 374 F.3d at 802.

### 3. The Individual Counterclaim Defendants

The contacts Frontier attributes to the individual counterclaim defendants are substantially similar to those already addressed with respect to Activ GmbH and the UK counterclaim defendants, *supra*. As to Kim Koehler, Frontier asserts he: "on behalf of Green Evolution Capital, cooperated with and perpetuated this fraudulent transfer, as evidenced by his signature on the December 29, 2015, Assignment of Equity Interests, assigning AS (Wright) to GEC," and showed his "willingness to hold Activ Solar GmbH's partnership interest in Green Evolution Capital, LLP in trust." (Dkt. No. 101 at 16:11–14.) Next, Frontier asserts that Colin Bent traveled to California on one occasion, and exchanged emails and phone calls with Frontier's representatives in California. As to Kaveh Ertefai, Frontier again relies on his visit to California in December 2015.

Frontier's allegations do not establish that the individual counterclaim defendants personally directed their actions to California.[15] Accordingly, the allegations do not rise to a level where due process would permit it to exercise personal jurisdiction over the individual counterclaim defendants. *Schwarzenegger*, 374 F.3d at 803.

### B. Alter Ego: Imputing Jurisdiction over Non-Plaintiff Counterclaim Defendants

Frontier's principal jurisdictional argument is that the Court's jurisdiction over plaintiffs may be imputed to the non-plaintiff counterclaim defendants through an alter ego theory.[16] Federal courts

---

[15] Frontier recites identical allegations as to the individual counterclaim defendants in its arguments addressing alter ego. Frontier's reliance on these contacts to support its claim of specific jurisdiction over the individual counterclaim defendants does not persuade.

[16] Frontier attempts to impute jurisdiction over non-plaintiff counterclaim defendants on an alter ego theory in two ways. First, Frontier asserts that plaintiffs waived personal jurisdiction when

"apply the law of the forum state in determining whether a corporation is an alter ego" of its shareholders. *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003), *amended on denial of reh'g*, 335 F.3d 834 (9th Cir. 2003).  California recognizes that "[t]he alter ego doctrine arises when a [party] comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the [moving party's] interests."  *Mesler v. Bragg Mgt. Co.*, 39 Cal.3d 290, 300 (1985).

To invoke the alter ego doctrine, Frontier must show as to each non-plaintiff counterclaim defendant: "(1) that there [is] such unity of interest and ownership that separate personalities of the corporation and [its shareholder] no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow."  *Mesler*, 39 Cal.3d at 300; *see also Hickey*, 322 F.3d at 1128 (quoting *Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988)).  This two-part test involves consideration of a host of factors:

> [1] commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses; [2] the treatment by an individual of the assets of the corporation as his own; [3] the failure to obtain authority to issue stock or to subscribe to or issue the same; [4] the holding out by an individual that he is personally liable for the debts of the corporation; [5] the failure to maintain minutes or adequate corporate records, and the confusion of the records of the separate entities; [6] the identical equitable ownership in the two entities; [7] the identification of the equitable owners thereof with the domination and control of the two entities; [8] identification of the directors and officers of the two entities in the responsible supervision and management; [8] sole ownership of all of the stock in a corporation by one individual or the members of a family; [9] the use of the same office or business location; the employment of the same employees and/or attorney; [10] the failure to adequately capitalize a corporation; [11] the total absence of corporate assets, and undercapitalization; [12] the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation; [13] the concealment and misrepresentation of the identity of the responsible

they filed the original complaint in this Court, which necessarily waived jurisdiction with respect to all alter ego non-plaintiff counterclaim defendants.  Second, Frontier asserts that the Court has specific jurisdiction over plaintiffs by virtue of their contacts with California, which should apply equally to the alter ego non-plaintiff counterclaim defendants.  As discussed above, however, the Court concludes that Frontier's proffer as to alter ego is insufficient.  The Court therefore declines to reach the merits of Frontier's jurisdictional arguments extending therefrom.

ownership, management and financial interest, or concealment of personal business activities; [14] the disregard of legal formalities and the failure to maintain arm's length relationships among related entities; [15] the use of the corporate entity to procure labor, services or merchandise for another person or entity; [16] the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another; [17] the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions; [18] and the formation and use of a corporation to transfer to it the existing liability of another person or entity.

*Greenspan v. LADT, LLC*, 191 Cal.App.4th 486, 513 (2011) (internal alterations omitted) (quoting *Zoran Corp. v. Chen*, 185 Cal.App.4th 799, 811–12 (2010)).

California courts caution that this list is not exhaustive and no single factor is determinative. The alter ego test should not be construed as a litmus test and "the conditions under which a corporate entity may be disregarded vary according to the circumstances in each case." *Automotriz Del Golfo De Sal S.A. de C.V. v. Resnick*, 47 Cal.2d 792, 796 (1957); *see also Sonora Diamond Corp. v. Superior Court*, 83 Cal.App.4th 523, 539 (2000) ("courts must look at all the circumstances to determine whether the doctrine should be applied").

The Court addresses the parties' alter ego arguments with respect to the non-plaintiff counterclaim defendants in turn: (1) Activ GmbH; (2) the UK counterclaim defendants; and (3) the individual counterclaim defendants.

### 1. Counterclaim Defendant Activ GmbH

The first prong of the alter ego test requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Gerritsen v. Warner Bros. Entertainment, Inc.*, 116 F. Supp. 3d 1104, 1138 (C.D. Cal. 2015) (quoting *NetApp, Inc. v. Nimble Storage, Inc.*, 2015 WL 400251, *5 (N.D. Cal. Jan. 29, 2105)). Direct evidence of manipulative control by the parent of its subsidiaries supports a finding of an alter ego relationship. *See Institute of Veterinary Pathology, Inc. v. Cal. Health Laboratories, Inc.*, 116 Cal.App.3d 111, 120 (1981). The parties agree that Activ GmbH is the 100% owner of plaintiff ASH. It is similarly undisputed that Activ GmbH and ASH share several employees, officers, directors, and agents. But it

23

is well-established that "[t]otal ownership and shared management personnel are alone insufficient to establish the requisite level of control." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1073 (9th Cir. 2015). Otherwise parent and subsidiary entities would always be presumed alter egos.

Beyond overlapping ownership and management, Frontier asserts that the transfer of AS (Wright) from ASH to GEC in December 2015 shows the requisite level of control. Specifically, Frontier asserts that the transfer shows that Activ GmbH "manipulated assets and liabilities between the various entities so as to concentrate the assets in some, and the liabilities in others." (Dkt. No. 99 at 11:12–13.) The transfer occurred within weeks of Activ GmbH filing for bankruptcy, which in Frontier's view, shows that Activ GmbH "deliberately undercapitalized itself and its subsidiaries, including ASH . . . ." (*Id.* at 11:9–11.) Importantly, the FACC does not allege any facts tending to show that that Activ GmbH was involved in the transfer other than the multiple hats of Ertefai. Based on his multiple roles, the FACC includes only a conclusory allegation that all Activ GmbH subsidiaries acted at the direction of Activ GmbH. (FACC ¶¶ 92, 93.) Without any specific facts to support its theory that Activ GmbH was involved, Frontier has not shown the requisite level of control of ASH by Activ GmbH necessary for alter ego.[17]

Frontier also relies on the May 2013 indemnity agreement with respect to its claim of alter ego. The Court cannot discern how the indemnity agreement is jurisdictionally relevant. The indemnity agreement shows, at most, that Activ GmbH signed as the parent of ASH and AS (Wright). This reflects nothing more than a normal business transaction where a bond holder requires a better-capitalized parent company to sign on to protect all parties' interests. Put simply, the indemnity agreement does not show that Activ GmbH controlled plaintiffs "to such a degree as to render the latter the mere instrumentality of the former." *Gerritsen*, 116 F. Supp. 3d at 1138.

Moreover, the Court doubts that treating Activ GmbH as a separate corporate entity may result in injustice (prong two). As discussed with respect to prong one, *supra*, Frontier takes the position that Activ GmbH undercapitalized itself and ASH when it transferred assets from ASH to

---

[17] Activ GmbH further argues it could not have been an alter ego of plaintiffs at the time the counterclaims were filed because it had already initiated insolvency proceedings and was completely controlled by the bankruptcy trustee. However, Activ GmbH provides no authority for the proposition that the Court cannot consider its relationship with plaintiffs prior to the bankruptcy.

GEC.  The Court cannot discern how injustice may result here.  The classic alter ego argument involves a parent undercapitalizing its subsidiary such that the funds are horded at the parent level and the subsidiary is unable to meet its obligations.  *See, e.g., Slottow v. American Casualty Co.*, 10 F.3d 1355, 1360 (9th Cir. 1993) (noting the applicability of alter ego doctrine where parent undercapitalized subsidiary in effort to avoid liability).  In that scenario, it can be unjust to allow the parent to hide behind the corporate form to avoid the liabilities of its subsidiary.  *Id.*  Here, by contrast, Frontier argues that Activ GmbH undercapitalized both itself and its subsidiary ASH.  Frontier seeks to assert jurisdiction over a company in bankruptcy.  Frontier's allegations fail to illuminate the import of a parent entity's insolvency.  Without further clarity, the Court is left to guess what injustice may arise under these circumstances.

### 2.  *The UK Counterclaim Defendants*

Next, Frontier argues that the Court's personal jurisdiction over plaintiffs may be imputed to plaintiffs' alleged alter egos Activ UK and Green Evolution.  As to unity of interest (prong one), Frontier points to the following allegations to support its argument that the Court should disregard corporate formalities and impute plaintiffs' contacts to the UK counterclaim defendants, namely because they: (i) are the parent companies of plaintiff GEC; (ii) share employees and attorneys with other Activ entities; (iii) deliberately undercapitalized Activ GmbH and ASH by effectuating the transfer from ASH to GEC; (iv) did not maintain an arms-length relationship in connection with the same transfer of assets; and (iv) manipulated assets and liabilities among the various Activ entities.

All of these allegations treat Activ UK and Green Evolution as one.  In that regard, they do not show that either entity *itself* had such pervasive control over plaintiffs that plaintiffs are mere instrumentalities of Activ UK or Green Evolution.  *Gerritsen*, 116 F. Supp. 3d at 1138.  The only allegation specific to Activ UK is that Kaveh Ertefai was both the president of ASH and officer of Activ UK.  Under California law, "[i]t is considered a normal attribute of ownership that officers and directors of the parent serve as officers and directors of the subsidiary."  *Sonora*, 83 Cal.App.4th at 548–49.  As to Green Evolution, the only specific allegation is that its partner Kim Koehler signed the document effectuating the transfer of AS (Wright) from ASH to GEC.  A signature on one document

United States District Court

Northern District of California

1   does not rise to the level of "manipulative control by the parent of its subsidiaries." *Gerritsen*, 116

2   F.Supp.3d at 1142.

3       Accepted as true, the alter ego allegations against the UK counterclaim defendants are legally

4   insufficient to satisfy the unity of interest prong.  Having determined that Frontier failed to establish

5   the first prong, the Court declines to address the second prong of the alter ego test at this juncture.

6               *3.   The Individual Counterclaim Defendants*

7       Frontier essentially argues that the first prong, *i.e.* unity of interest and ownership, is met

8   because the individual counterclaim defendants disregarded plaintiffs' corporate forms in their

9   respective roles as officers and directors of plaintiffs.  Said otherwise, Frontier focuses on the roles

10  the individual counterclaim defendants played within the corporate family, ignoring whether they

11  personally have an ownership interest in plaintiffs.  While a court should generally look to all

12  circumstances when conducting an alter ego analysis, "ownership in a corporation is a necessary

13  element for the application of the alter ego doctrine under California law." *Hickey*, 322 F.3d at 1129–

14  30 ("an individual must own at least a portion of a corporation before an alter ego relationship is

15  deemed to exist under California law").  Frontier's attempt to invoke the alter ego doctrine as to the

16  individual counterclaim defendants fails on this threshold issue.  *See id.*

17      As to Colin Bent, Frontier does not allege that he owns any interest in plaintiffs.  On that basis

18  alone the alter ego doctrine cannot be invoked against him.

19      As to Kim Koehler, Frontier alleges merely that he holds a 70.1% interest in Green Evolution

20  "in trust, on behalf of the Activ Solar entities."  (FACC ¶ 51.)  First, an allegation that Koehler holds

21  an interest in trust on behalf of separate entities does not amount to a personal interest in Green

22  Evolution for alter ego purposes.  Second, Green Evolution is not a plaintiff.  Frontier in effect tries to

23  establish alter ego by twice piercing the corporate veil to bootstrap Koehler to plaintiff GEC through

24  Green Evolution's 100% ownership in GEC.  As discussed above, however, there are insufficient

25  allegations to show that Green Evolution and GEC are alter egos of one another.  Frontier's pass-

26  through alter ego theory therefore fails as to Koehler.

27      Finally, Kaveh Ertefai is the president of ASH, an officer of AS (Wright), and an officer of

28  GEC.  As with Bent and Koehler, the Court cannot invoke the alter ego doctrine absent a showing

United States District Court

Northern District of California

1    that Ertefai has an ownership interest in plaintiffs.  Frontier makes no such showing in opposition to

2    Ertefai's motion to dismiss.  Though the FACC alleges Ertefai "controls all the other Activ entities,

3    and is a beneficial owner and majority owner of all of them," (FACC ¶ 88) this conclusory allegation

4    of ownership alone is not enough.  *See Wehlage v. EmpRes Healthcare, Inc.*, 791 F. Supp. 2d 774,

5    782 (N.D. Cal. 2011) ("broad allegations are not sufficient to show a unity of interest and

6    ownership").  This deficiency is fatal to Frontier's claim that Ertefai is an alter ego of plaintiffs.

7           Frontier's claim that the alter ego doctrine requires that plaintiffs' contacts with the forum be

8    imputed to the individual counterclaim defendants fails.

9           In sum, the motions to dismiss for lack of personal jurisdiction by non-plaintiff counterclaim

10   defendants Activ GmbH, Activ UK, Green Evolution, Colin Bent, Kim Koehler, and Kaveh Ertefai

11   are **GRANTED**.  In light of Frontier's representation at oral argument that it has uncovered additional

12   facts to support its alter ego theory, the non-plaintiff counterclaim defendants are **DISMISSED WITH**

13   **LEAVE TO AMEND**.  Any further amended counterclaims must address personal jurisdiction

14   allegations as to each non-plaintiff counterclaim defendant *separately* and with specificity to make

15   the requisite showing: (i) of each's own contacts with the State, and/or (ii) that each should be treated

16   as an alter ego of a particular plaintiff.  Generic corporate overlap and reliance on a single transaction

17   not "directly related" to Frontier's counterclaims are insufficient.

18   **V.       PLAINTIFFS' MOTION TO DISMISS THE FACC**

19          Plaintiffs move to dismiss Frontier's counterclaims against them in part under Rule 12(b)(1)

20   for lack of subject matter jurisdiction and in part under Rules 12(b)(6) for failure to state a claim.  The

21   Court addresses plaintiffs' challenges to the FACC below.

22          **A.  Plaintiffs' Motion to Dismiss under Rule 12(b)(1)**

23          Plaintiffs move under Rule 12(b)(1) to dismiss Count Two for fraudulent conveyance of

24   ASH's interest in AS (Wright) to GEC (the "ASW asset transfer") under California's Uniform

25   Fraudulent Transfer Act ("UFTA") and Count Five for a judgment declaring that the challenged

26   transfer is invalid under UFTA.  Plaintiffs argue that the Court lacks subject matter jurisdiction over

27   these claims relating to the ASW asset transfer as a result of Activ GmbH's pending Austrian

28   bankruptcy proceedings (the "Activ GmbH bankruptcy").  In plaintiffs' view, the Activ GmbH

27

United States District Court

Northern District of California

1    bankruptcy proceeding is the exclusive forum for Frontier's challenges to the ASW asset transfer.

2    Frontier opposes, arguing that that the Activ GmbH bankruptcy does not divest this Court of subject

3    matter jurisdiction over any of its claims.

4         In support of their argument, plaintiffs rely exclusively on the declaration of Dr. Ute Toifl, the

5    court-appointed administrator presiding over the Activ GmbH bankruptcy.  (Dkt. No. 87-1, "Toifl

6    Decl.")[18]  Mr. Toifl declares that "Austrian law provides that the bankruptcy court has exclusive

7    authority to rule upon disputed claims."  (*Id.* ¶ 9, Exh. B.)  Plaintiffs provide no legal authority for the

8    proposition that an Austrian bankruptcy proceeding divests a United States Court of jurisdiction over

9    Frontier's claims.  Indeed, Chapter 15 of the United States Bankruptcy Code provides a mechanism

10   for a United States bankruptcy court to recognize foreign insolvency proceedings.  *See* 11 U.S.C. §§

11   1501, *et seq*.  Activ GmbH has not commenced a Chapter 15 case for recognition in the United States,

12   further undermining plaintiffs' argument.  The motion to dismiss on jurisdictional grounds is **DENIED**.

13        **B.  Plaintiffs' Motion to Dismiss under Rule 12(b)(6)**

14        Plaintiffs move to dismiss for failure to state a claim under Rule 12(b)(6) Frontier's

15   counterclaims against them for fraudulent transfer in violation of UFTA, fraud, and civil conspiracy

16   (Counts Two, Three, and Four, respectively).  Plaintiffs contend the FACC fails to state these claims

17   with particularity as required by Rule 9(b) and that each claim otherwise fails under Rule 12(b)(6).

18   The Court addresses these counterclaims in turn.

19        *1.  Violation of UFTA (Count Two)*

20        Frontier brings a claim under the UFTA against ASH[19] for its role as the transferor in the

21   ASW asset transfer.  The purpose of the UFTA is "to prevent debtors from placing property which

22   legitimately should be available for the satisfaction of demands of creditors beyond their reach."

---

23

24        [18] The Toifl Decl. was submitted in support of Activ GmbH's motion to dismiss and cross-
referenced by plaintiffs in their motion.  This underscores the Court's concerns with non-plaintiff

25   counterclaim defendants' burdensome approach to filing unnecessarily repetitive motions to dismiss.
*See* note 7, *supra*.

26

27        [19]  The FACC alleges liability against all plaintiffs as alter egos of Activ GmbH and all
counterclaim defendants.  That theory of liability is not yet alleged properly.  *See* Section IV.B, *supra*.

28   In that respect, plaintiffs' motion to dismiss the UFTA claim is **GRANTED** to the extent it is brought
against AS (Wright) and GEC.

*Optional Capital, Inc. v. Das Corp.*, 222 Cal.App.4th 1388, 1401 (2014) (quoting *Chichester v. Mason*, 43 Cal.App.2d 577, 584 (1941)).  The statute provides that a fraudulent transfer may be established either by (i) actual fraud or (ii) constructive fraud.  *See* Cal. Civ. Code § 3439.04(a)(1), (2).  ASH moves to dismiss on pleading grounds, arguing that Frontier fails to allege either type of fraud.  On the other hand, Frontier contends it has pled actual fraud with specificity, and in the alternative, the FACC pleads constructive fraud by ASH in conducting the ASW asset transfer.

The UFTA provides a non-exclusive list of factors that may constitute evidence from which a court may infer intent of actual fraud.  *See* Cal. Civ. Code § 3439(b).  Here, the FACC alleges facts to support a plausible inference of actual fraud based on at least seven of the factors:

> (1) whether the transfer or obligation was to an insider; (2) whether the debtor retained possession or control of the property transferred after the transfer; (3) whether the transfer or obligation was disclosed or concealed; (4) whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) whether the transfer was of substantially all the debtor's assets; … (8) whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; [and] (9) whether the debtor was insolvent or became insolvent shortly after the transfer was made….

*Id*.  Specifically, Frontier alleges that: ASH transferred its assets to an insider, GEC, and that as a result ASH retained control over the assets (*i.e.*, AS (Wright)) at all times (FACC ¶¶ 15, 44–45, 131); ASH concealed the true nature of the ASW asset transfer through its representatives Kaveh Ertefai and Colin Bent in person and via email (*id*. ¶¶ 50, 53–58, 66); Frontier sued ASH in 2014 for its alleged defaults in connection with their various agreements, and ASH allegedly began defaulting again by September 2015 (*id*. ¶¶ 33, 39); ASH transferred all of its assets to GEC in the ASW asset transfer (*id*. ¶ 74); and ASH transferred the assets to GEC for below market value, leaving ASH unable to meet its obligations to Frontier (*id*. ¶¶ 32–42, 60).

ASH's arguments all attack the merits of Frontier's UFTA claim.  For example, ASH invites the Court to resolve the parties' underlying contract disputes and conclude there was no fraud as a matter of law.  Such factual analysis is inappropriate on a Rule 12 motion.  At this juncture, Frontier's only burden is to allege a claim that is plausible on its face.  *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 570 (2007); Fed. R. Civ. P. 8(a)(2).  And, because the claim sounds in fraud, Frontier must plead the UFTA claim with particularity.  *See* Fed. R. Civ. P. 9(b).  The Court concludes that Frontier has done so.  The FACC includes specific allegations that, if true, raise a plausible inference of actual fraud under Section 3439.  Given the amount of detail alleged in the FACC regarding the "who, what, when, where, and how" of the alleged fraudulent transfer, the Court is not persuaded by ASH's 9(b) arguments.  *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).  The FACC enables ASH to "prepare an adequate answer from the allegations."  *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400 (9th Cir. 1986).  Nothing more is required at this stage.

Having found the FACC pleads actual fraud with particularity, the Court need not reach the parties' alternative arguments regarding constructive fraud.  Plaintiffs' motion to dismiss the UFTA claim against ASH is **DENIED**.

### 2.   Fraud (Count Three)

Frontier alleges two separate theories to support its fraud claim: (a) first, that plaintiffs, by and through Kaveh Ertefai and Colin Bent, made material misrepresentations or omissions to Frontier regarding any effect of the ASW asset transfer on Frontier in light of the pending insolvency of Activ GmbH; and (b) second, that plaintiffs' attempt to access the QuickBooks account constitutes fraud.[20]  Plaintiffs move to dismiss, arguing that the FACC fails to state a fraud claim under both theories.

### a.   Activ GmbH Insolvency and ASW Asset Transfer

To state a claim, Frontier must allege, *inter alia*, that plaintiffs made a misrepresentation by "false representation, concealment, or nondisclosure" with the intent to defraud Frontier.  *Lazar v. Superior Ct.*, 12 Cal.4th 631, 637 (1996).  Frontier's claim is based on an affirmative misrepresentation.  More particularly, the FACC alleges that, in December 2015, Colin Bent made a material misrepresentation on behalf of plaintiffs when he emailed Balduin Hesse summarizing the terms of the proposed ASW asset transfer.  (FACC ¶ 53.)  Notably, Bent represented:

> "while [ASH] will have little in way of assets under [the] proposal, Frontier **will still have recourse to [Activ] GmbH** and the assets

---

[20]  The FACC also includes plaintiffs' alleged illegal access of Frontier's router in the fraud claim.  However, the FACC does not state how such access would involve a material misrepresentation, much less any of the other requirements for fraud.

United States District Court
Northern District of California

1  housed in AS (Wright).  Our view is that the proposed transfer to GEC
2  **leaves Frontier neutral in terms of risk** related to the surety bonds
   and related indemnification."

3  (*Id.* [emphasis supplied].)  Unbeknownst to Frontier, it would not have any recourse against Activ

4  GmbH in light of the impending insolvency due to the October 2015 €57 million arbitration award

5  against Activ GmbH in an unrelated dispute.  (*Id.* ¶ 75.)   Frontier alleges that, had it known about the

6  impending insolvency, it would have immediately asserted its rights under the LLC Agreement to

7  take complete control of AS (Wright) before it was transferred to GEC.  (*Id.* ¶ 145.)

8  As with the UFTA claim, *supra*, plaintiffs' only argument why Frontier's well-pleaded claim

9  fails is really a merits challenge.[21]  Plaintiffs' arguments that Frontier incorrectly interprets the LLC

10  Agreement is a factual dispute not appropriately resolved on a Rule 12(b)(6) motion.  The Court finds

11  that this theory of fraud is plausible on its face.  As such, plaintiffs' motion to dismiss Frontier's

12  fraud claim is **DENIED**.

13  ### b.  Access to QuickBooks Account

14  With respect to the QuickBooks account, Frontier's fraud claim is nonsensical.  Plaintiffs are

15  not alleged to have made any misrepresentation to Frontier and Frontier does not allege any reliance

16  thereon.  Frontier conceded at oral argument that it would not include this allegation as a basis for

17  fraud in any amended counterclaims.  Plaintiffs' motion to dismiss the fraud claim, to the extent it is

18  based on accessing the QuickBooks account, is **GRANTED**.

19  ### 3.  Civil Conspiracy (Count Four)

20  Under California law, "[t]he elements for an action for civil conspiracy are (1) formation and

21  operation of the conspiracy and (2) damage resulting to [counterclaim] plaintiff (3) from an act done

22  in furtherance of the common design."  *Thompson v. Cal. Fair Plan Ass'n*, 221 Cal.App.3d 760, 767

23  (1990).  The claim is "not a tort but rather a theory of joint liability whereby all who cooperate in

24

25  [21]  Plaintiffs argue for the first time in reply that this theory of fraud fails based on the
economic loss rule.  (*See* Dkt. No. 112 at 13:26–14:13.)  Plaintiff's opening motion limited its
26  economic loss rule argument to the QuickBooks account fraud claim.  (*See* Dkt. No. 89 at 21:26–
22:27.)  It is improper for the Court to consider this argument as it was raised for the first time on
27  reply. *See State of Nev. v. Watkins*, 914 F.2d 1545, 1560 (9th Cir. 1990) (parties "cannot raise a new
issue for the first time in their reply briefs") (citations omitted); *Dytch v. Yoon*, 2011 WL 839421, *3
28  (N.D. Cal. March 7, 2011) (collecting cases).

another's wrong may be held liable."  *Id.*  Here, Frontier asserts its civil conspiracy claim to hold plaintiffs liable for any action taken in furtherance of the conspiracy, regardless of which counterclaim defendant committed the act.  (FAC ¶¶ 150–56.)

Plaintiffs argue that the FACC fails to allege any particular act or event that raises a plausible inference that plaintiffs and non-plaintiff counterclaim defendants reached an explicit or tacit understanding of the conspiracy (element one).  *See Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 607 (N.D .Cal. 1991) (agreement to form and operate the conspiracy may be tacit or explicit).  To survive a motion to dismiss a civil conspiracy claim, "[i]t is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves toward this wrongful goal by virtue of a mutual understanding or agreement."  *Id.*  The FACC includes the particular allegation that plaintiffs and non-plaintiff counterclaim defendants reached an understanding by:

> agreeing to transfer ASH's interest in AS(Wright) while: intentionally failing to disclose to Frontier Activ Solar GmbH's insolvency; misrepresenting that Frontier would be 'left neutral' in terms of risk as a result of the transfer, despite the Indemnification Agreement being effective against only ASH, which is now without assets as a result of this transfer; accessing the Wells Fargo Bank Account, QuickBooks Account, and router, without Frontier's authorization, in an attempt to secure the fraudulent trasnfer.

(FACC ¶ 151.)

These very specific allegations raise a plausible inference of a conspiratorial agreement among all counterclaim defendants.  *Id.*  Plaintiffs' motion to dismiss the civil conspiracy claim is **DENIED**.

## VI.   PLAINTIFFS' MOTION TO ENFORCE COMPLIANCE WITH COURT ORDER[22]

Plaintiffs previously moved for a preliminary injunction requiring Frontier to comply with the parties' agreements related to the Wright Project.  The Court denied plaintiffs' motion as plaintiffs failed to establish the necessary three elements that would entitle them to specific performance of the contracts under Delaware law.  (Dkt. No. 66, "PI Order.")  Relevant here, the PI Order "directed [Frontier] to provide plaintiffs with monthly updates by 5:00 p.m. PST/PDT on the first day of each

---

[22]  The Court resolves the two administrative motions to seal documents submitted in connection with this substantive motion via separate order entered this date.

United States District Court
Northern District of California

month in a format consistent with those required by section 2.4 of the Omnibus Agreement as restated in the fourth amendment thereto." (*Id.* at 10:6–8.)  The parties agree that Frontier timely provided plaintiffs with monthly updates on July 1 and August 1, 2016.

Plaintiffs now object to the nature of the updates, arguing the PI Order requires Frontier to disclose significantly more detail and, as a result, Frontier has not complied with the PI Order. Frontier opposes, taking the position that its monthly disclosures satisfy the Court's directive in the PI Order.  Frontier also argues that equity requires the Court not order any further disclosures because plaintiffs are demanding Frontier perform substantial additional work without providing Frontier the benefit of compensation due under the contracts.  The Court agrees with Frontier.  The PI Order directed monthly disclosures to allow plaintiffs to remain generally apprised of the status of the Wright Project during the pendency of this litigation.  The July and August disclosures achieve this end.  Plaintiffs' motion to enforce compliance with the PI Order is therefore **DENIED**.

**VII.    CONCLUSION**

For the foregoing reasons, the Court hereby **ORDERS** as follows:

- Defendants' motion to dismiss the FAC (Dkt. No. 85) is **GRANTED IN PART**: the conversion claim is **DISMISSED WITH PREJUDICE** insofar as it is brought by GEC and ASH, the conversion claim against the individual defendants is **DISMISSED WITHOUT PREJUDICE** to later motion showing good cause for amendment, and the civil theft claim is **DISMISSED WITHOUT PREJUDICE** to later motion showing good cause for amendment.  Frontier shall file its answer to the FAC within seven (7) days of the date of this Order, or by **September 14, 2016**.

- Non-plaintiff counterclaim defendant Activ GmbH's motion to dismiss the FACC (Dkt. No. 87), the non-plaintiff individual counterclaim defendants' motion to dismiss the FACC (Dkt. No. 90), and the non-plaintiff UK counterclaim defendants' motion to dismiss the FACC (Dkt. No. 91) are **GRANTED WITH LEAVE TO AMEND** for lack of personal jurisdiction.  The non-plaintiff counterclaim defendants are **DISMISSED WITHOUT PREJUDICE**.  Frontier shall file its second amended counterclaims consistent with this Order within fourteen days, or by **September 21, 2016**.  Non-plaintiff

counterclaim defendants shall file their response thereto within fourteen days after Frontier's second amended counterclaims are filed.

- Plaintiffs' motion to dismiss the FACC (Dkt. No. 89) is **GRANTED IN PART**: the UFTA claim is **DISMISSED WITH PREJUDICE** insofar as it is asserted against AS (Wright) and GEC, and the fraud claim is **DISMISSED WITH PREJUDICE** insofar as it is based on the QuickBooks theory.  Plaintiffs shall file their answer within fourteen days after Frontier's second amended counterclaims are filed.

- Plaintiffs' motion to enforce compliance with Court order (Dkt. No. 93) is **DENIED**.

This Order terminates Docket Numbers 85, 87, 89, 90, 91, and 93.

**IT IS SO ORDERED.**

Dated: September 7, 2016

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**

United States District Court
Northern District of California

34