UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **GEC US 1 LLC, *et al.*,**<br>    Plaintiffs,<br>  v.<br>**FRONTIER RENEWABLES, LLC, *et al.*,**<br>    Defendants.<br><br>**FRONTIER RENEWABLES, LLC,**<br>    Counterclaim Plaintiff,<br>  v.<br>**ACTIV SOLAR GMBH, *et al.*,**<br>    Counterclaim Defendants. | Case No.: 16-cv-1276 YGR<br><br>**ORDER ON MOTION TO DISMISS SECOND AMENDED COUNTERCLAIMS**<br><br>Re: Dkt. No. 126 |

Plaintiffs GEC US 1 LLC, AS (Wright) LLC, and Activ Solar Holdings (US) Inc. bring this action against defendants Frontier Renewables LLC ("Frontier"), Balduin Hesse, and Reinhard Hesse arising out of plaintiffs' and Frontier's contractual relationships with respect to their jointly owned venture, Wright Solar, LLC, which was formed to develop a power generation project (the "Wright Project"). Plaintiffs allege that Frontier breached its contractual obligations under the various agreements related to the Wright Project, and that all defendants have improperly asserted control over and ownership of Wright Solar amounting to conversion and civil theft under California law. Frontier asserts counterclaims arising out of alleged breaches of the same agreements against plaintiffs, as well as non-plaintiff counterclaim defendants Activ Solar GmbH ("Activ GmbH") and Kaveh Ertefai. Based thereon, plaintiffs and Frontier seek declaratory

and injunctive relief resolving their respective contractual obligations, compensatory and punitive damages, as well as an award of attorneys' fees.[1]

Previously, on September 7, 2016, the Court dismissed for lack of personal jurisdiction Frontier's counterclaims against the non-plaintiff counterclaim defendants, but allowed Frontier an opportunity to amend. (*See* Dkt. No. 120.) Frontier filed the second amended counterclaims on September 21, 2016. (Dkt. No. 125, "SACC"). The SACC deviates from its predecessor in three significant ways: (1) only Activ GmbH and Kaveh Ertefai are now named as non-plaintiff counterclaim defendants; (2) Frontier adds allegations regarding the formation of the relationship between itself, Activ GmbH, and Ertefai, as well as the role those relationships played in Frontier's decision to enter into the Wright Solar-related agreements with Activ GmbH's subsidiaries; and (3) Frontier provides additional detail to support its allegations regarding Ertefai's ownership of Activ GmbH and its subsidiaries, as well as his role in the alleged fraud.

Currently pending before the Court is counterclaim defendants' joint motion to dismiss the second amended counterclaims (Dkt. No. 126): First, Activ GmbH and Ertefai once again move to dismiss for (1) lack of personal jurisdiction under Rule 12(b)(2), arguing the SACC fails to allege facts sufficient under a theory of either (a) specific jurisdiction or (b) alter ego and (2) failure to state a claim under Rule 12(b)(6) against them specifically, as they did not breach the contract at issue themselves, were not parties to the alleged fraud or fraudulent transfer, and thus also committed no tort that could form the basis of a civil conspiracy claim.[2] Second, all counterclaim defendants also again move to dismiss the fraud claim for failure to state a claim under Rule 12(b)(6).

---

[1] *See* Order on Motions to Dismiss, Dkt. No. 120, for a detailed overview of the parties and the instant dispute.

[2] Although it is unclear from their motion, counterclaim defendants clarified at oral argument that their motion to dismiss the civil conspiracy counterclaim was brought on behalf of non-plaintiff counterclaim defendants Activ GmbH and Ertefai only.

2

Having carefully considered the papers submitted, the pleadings in this action, and oral argument held January 31, 2017, and for the reasons discussed below, the Court **ORDERS** as follows:

1. The motion to dismiss for lack of personal jurisdiction by non-plaintiff counterclaim defendant Activ GmbH is **GRANTED**. The motion to dismiss for lack of personal jurisdiction by non-plaintiff counterclaim defendant Kaveh Ertefai is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. The motion is **GRANTED** with respect to Counts One (Breach Of Contract) and Five (Declaratory Judgment).

    b. The motion is **DENIED** with respect to Counts Two (Violations of the Uniform Fraudulent Transfer Act), Three (Fraud), and Four (Civil Conspiracy).

2. The motion to dismiss for failure to state a claim by non-plaintiff counterclaim defendant Kaveh Ertefai is **GRANTED IN PART** and **DENIED IN PART** as follows:

    a. The motion to dismiss Count Two (Violations of the Uniform Fraudulent Transfer Act) with respect to Ertefai is **GRANTED**.

    b. The motion to dismiss Counts Three (Fraud) and Four (Civil Conspiracy) with respect to Ertefai is **DENIED.**

    The balance of the motion is **DENIED AS MOOT**.

3. The motion to dismiss Count Three (Fraud) by all counterclaim defendants is **DENIED**.

**I.   LACK OF PERSONAL JURISDICTION – ACTIV GMBH AND ERTEFAI**

Non-plaintiff counterclaim defendants (Activ GmbH and Ertefai) first move to dismiss for lack of personal jurisdiction, arguing that the SACC fails to allege facts sufficient under both a specific jurisdiction theory and an alter ego theory imputing jurisdiction to them. The Court addresses each argument as to each non-plaintiff counterclaim defendant:

3

**A.     Specific Jurisdiction: Contacts with California**

Frontier asserts that the non-plaintiff counterclaim defendants are subject to the specific jurisdiction, rather than the general jurisdiction, of the Court because they committed fraudulent acts in and directed their fraudulent acts toward California.

**1.     Legal Standard**

California law[3] allows for the exercise of "jurisdiction on any basis not inconsistent with the Constitution of [California] or of the United States." Cal. Code Civ. Proc. § 410.10. Due process requires that the non-resident defendant have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice . . . ." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted). "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Calder v. Jones,* 465 U.S. 783, 788 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). Personal jurisdiction may be either general or specific. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

Specific jurisdiction "depends on an affiliatio[n] between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (internal quotation marks omitted). Said otherwise, personal jurisdiction requires that the Court evaluate whether the specific activity giving rise to the causes of action is sufficiently related to the forum state. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 (1952); *Hanson v. Denckla*, 357 U.S. 235, 250-53 (1958). The Ninth Circuit applies a three-prong test to determine whether a non-resident's activities are sufficiently related to the forum state to establish specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform

---

[3] Where no federal statute governs personal jurisdiction, the Court applies the law of the state in which it sits; here, California law applies. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

4

>some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
>(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
>(3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802 (citing *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). The party asserting jurisdiction bears the burden of demonstrating the first two prongs. *Id.*; *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). Failure to satisfy either of these prongs results in a lack of personal jurisdiction in the forum state. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1555 (9th Cir. 2006). If the party carries its burden, then "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto*, 539 F.3d at 1016. (citing *Schwarzenegger*, 374 F.3d at 802).

In determining whether the exercise of jurisdiction over a nonresident defendant comports with "fair play and substantial justice," the Ninth Circuit considers seven factors, none of which is dispositive:

>(1) the extent of the defendants' purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Core-Vent Corp. v. Nobel Indus. AB*, 11 F.3d 1482, 1487–88 (9th Cir. 1993) (citations omitted).

Finally, where the motion to dismiss is based on written submissions—rather than an evidentiary hearing— a proponent need only make a *prima facie* showing of jurisdiction with admissible evidence. *Schwarzenneger*, 374 F.3d at 800; *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). In evaluating the proffer, the Court must accept as true the uncontroverted allegations, and conflicts between facts contained in the parties' affidavits must be resolved in the proponent's favor. *AT&T v. Compagnie Bruxelles Lambert*, 94 F.3d 586, 588 (9th Cir. 1996).

The Court now addresses the jurisdictional showing as to each non-plaintiff counterclaim defendant.

5

**2. Non-Plaintiff Counterclaim Defendant Activ GmbH**

With respect to Activ GmbH, Frontier has added two sets of allegations: First, prior to the formation of the subsidiary companies, Activ GmbH representatives (including Ertefai) met with Frontier, provided Frontier with company materials, submitted financial statements and reports to the City of Palo Alto, and entered into an agreement with Frontier (the "Term Sheet") for the stated purpose of "engaging in the collaborative co-development" of four projects in California, including the Wright Project. Second, Activ GmbH controlled and/or performed various business functions on behalf of ASH, GEC, and AS (Wright), including by continuing to meet with Frontier (again through Ertefai), making payments to fund the Wright Project, and entering into contracts (again through Ertefai) with California-based third parties in furtherance of developing Wright Solar. (SACC ¶¶ 26–57.)

As to first set of allegations—which deal with the formation of the relationship between AS (Wright), Activ GmbH, Ertefai, and Activ GmbH's subsidiaries—these "contacts" with California do not concern the instant dispute between Frontier, ASH, and AS (Wright), and are therefore insufficient to vest this Court with specific jurisdiction over Activ GmbH. *See*, *e.g.*, *Yahoo! Inc. v. La Lingue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1210 (9th Cir. 2006) (single contact insufficient for personal jurisdiction unless cause of action arises from "that particular purposeful contact").[4] Even if the Term Sheet was the impetus for the formation of the subsidiary companies, Frontier acknowledges that, immediately after the Term Sheet, the domestic companies in this action were created to conduct business in California, and that these entities were the ones with whom Frontier has the contractual relationship giving rise to the action. (SACC ¶¶ 37-45.) Frontier has not pointed to a single authority supporting its argument that a parent company's negotiations prior to the formation of a subsidiary is enough to show that the parent company—rather than the subsidiaries—purposefully directed its contacts toward California or that subsequent disputes with the subsidiaries "arise out of" these initial negotiations.

---

[4] *See also* Order on Motions to Dismiss, Dkt. No. 120, at 20 (rejecting Frontier's reliance on the 2013 Indemnification Agreement as the basis for jurisdiction because "Frontier has not sued on the indemnity agreement and does not bring claims that 'arise out of' the indemnity agreement").

As to the second set of allegations, Frontier again points to mere corporate structure, which is "insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction." See *Ranza v. Nike*, Inc., 793 F.3d 1059, 1070 (9th Cir. 2015). Moreover, Frontier again relies on the official actions of Ertefai, who the Court previously found was acting as a representative of ASH and GEC, and not on behalf of ASH's parent Activ GmbH, when Frontier previously tried to advance this theory regarding other acts by Ertefai. (*See* Order on Motions to Dismiss, Dkt. No. 120, at 19-20.) *See also United States v. Bestfoods*, 524 U.S. 51, 69 (1998) ("directors and officers holding positions with a parent and its subsidiary can and do 'change hats' to represent the two corporations separately, despite their common ownership" (citations and internal quotation marks omitted)). Frontier once more fails to provide any authority to the contrary. Finally, Frontier also cites no authority that a parent corporation may not have overlapping officers or may not act to manage and even finance its subsidiaries without causing the Court to believe the entities disregarded corporate form—an argument which largely goes to alter ego.

In sum, Frontier has not established that the Court has specific jurisdiction over Activ GmbH, other than by imputing jurisdiction through an alter ego theory, which the Court addresses in section I.B.

### 3. Non-Plaintiff Counterclaim Defendant Kaveh Ertefai

With respect to Ertefai, Frontier has added three sets of allegations, namely that: (1) prior to the formation of the subsidiary companies, Ertefai met with Frontier; (2) Ertefai continued to attend meetings and make representations to Frontier, including the misrepresentation that perpetrated the alleged fraud, after the formation of the subsidiaries; and (3) Ertefai entered into contracts with California-based third parties in furtherance of developing Wright Solar. Frontier also alleges that Eretfai is the "ultimate owner" of Activ GmbH, ASH, and GEC.

Regarding the first and third sets of allegations, the analysis would parallel that regarding Activ GmbH addressed above. The "contacts" with California do not give rise to the instant dispute, and are therefore insufficient to vest this Court with specific jurisdiction over Ertefai.

7

However, the Court also considers the second set of allegations. These contacts with California can be viewed as existing only through Ertefai's corporate role, which would typically shield him from a court's exercise of jurisdiction. Here, Frontier claims that Ertefai is not entitled to invoke the "fiduciary shield doctrine" because Ertefai is a "primary participant" in the alleged wrongdoing. (Dkt. No. 129 at 11-12.) *See Matsunoki Group, Inc. v. Timberwork Oregon, Inc*., No. C 08–04078 CW, 2009 WL 1033818, at *3-4 (N.D. Cal. Apr. 16, 2009) (noting that the fiduciary shield doctrine does not apply where a "plaintiff shows that the corporate employee is the moving, active, conscious force behind the infringing activity" by, for example, demonstrating that the employee "directs, controls, ratifies, or participates in the infringing activity, or acts as the guiding spirit and the active directing hand in full charge of the corporation's operations") (citations, internal alterations, and internal quotation marks omitted).

Combined with Frontier's allegations that Ertefai owned and controlled Activ GmbH and its subsidiaries, Frontier's allegations that Ertefai (1) "spearheaded the effort to fraudulently transfer AS (Wright)" and (2) proposed the allegedly fraudulent transfer of AS (Wright) at a meeting with Frontier in California in December 2015, sufficiently tie Ertefai's alleged wrongdoing with his forum activity and show that he is not entitled to invoke the fiduciary shield doctrine. (SACC ¶¶ 75-88.) Thus, "personal liability for such infringement is appropriate without regard to piercing of the corporate veil." *Matsunoki Group, Inc.* 2009 WL 1033818, at *4 (citation omitted). The Court finds Frontier has met its burden on the first two prongs for establishing specific jurisdiction over Ertefai for its claims giving rise to the alleged fraud at the December 2015 meeting in California. Specifically, these include Counts Two (Violations of the Uniform Fraudulent Transfer Act), Three (Fraud), and Four (Civil Conspiracy). However, they do not give rise to Count One (Breach of Contract) and therefore Count Two (Declaratory Judgment).

Ertefai, on the other hand, has failed to come forward with a "compelling case" that the exercise of specific jurisdiction would not be reasonable in this context. *Boschetto*, 539 F.3d at 1016 (citing *Schwarzenegger*, 374 F.3d at 802). Ertefai mainly reiterates that he acted only in his corporate capacities, and that his contacts were of a "limited, unrelated nature." (Dkt. No. 126 at 16.) For the reasons stated above, Ertefai's arguments fail to persuade. Ertefai has not addressed

8

1  any of the other factors the Court must consider to show that exercising jurisdiction over him

2  would be unreasonable. *See Core-Vent Corp.*, 11 F.3d at 1487–88. Thus, the Court finds it may

3  exercise specific jurisdiction over Ertefai for Counts Two (Violations of the Uniform Fraudulent

4  Transfer Act), Three (Fraud), and Four (Civil Conspiracy).

**B.      Alter Ego: Imputing Jurisdiction over Non-Plaintiff Counterclaim Defendants**

Frontier's principal jurisdictional argument is once again that the Court's jurisdiction over plaintiffs may be imputed to the non-plaintiff counterclaim defendants through an alter ego theory.

### 1. Legal Standard

Federal courts "apply the law of the forum state in determining whether a corporation is an alter ego" of its shareholders. *S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003), *amended on denial of reh'g*, 335 F.3d 834 (9th Cir. 2003). California recognizes that "[t]he alter ego doctrine arises when a [party] comes into court claiming that an opposing party is using the corporate form unjustly and in derogation of the [moving party's] interests." *Mesler v. Bragg Mgt. Co.*, 39 Cal.3d 290, 300 (1985).

To invoke the alter ego doctrine, Frontier must show as to each non-plaintiff counterclaim defendant: "(1) that there [is] such unity of interest and ownership that separate personalities of the corporation and [its shareholder] no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler*, 39 Cal.3d at 300; *see also Hickey*, 322 F.3d at 1128 (quoting *Firstmark Capital Corp. v. Hempel Fin. Corp.*, 859 F.2d 92, 94 (9th Cir. 1988)). This two-part test involves consideration of a host of factors:

> [1] commingling of funds and other assets, failure to segregate funds of the separate entities, and the unauthorized diversion of corporate funds or assets to other than corporate uses; [2] the treatment by an individual of the assets of the corporation as his own; [3] the failure to obtain authority to issue stock or to subscribe to or issue the same; [4] the holding out by an individual that he is personally liable for the debts of the corporation; [5] the failure to maintain minutes or adequate corporate records, and the confusion of the records of the separate entities; [6] the identical equitable ownership in the two entities; [7] the identification of the equitable owners thereof with the domination and control of the two entities; [8] identification of the directors and officers of the two entities in the responsible supervision and management; [8] sole ownership of all of the stock in a corporation by one individual or the members of a family; [9] the use of the same office or business location; the

> employment of the same employees and/or attorney; [10] the failure to adequately capitalize a corporation; [11] the total absence of corporate assets, and undercapitalization; [12] the use of a corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation; [13] the concealment and misrepresentation of the identity of the responsible ownership, management and financial interest, or concealment of personal business activities; [14] the disregard of legal formalities and the failure to maintain arm's length relationships among related entities; [15] the use of the corporate entity to procure labor, services or merchandise for another person or entity; [16] the diversion of assets from a corporation by or to a stockholder or other person or entity, to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets in one and the liabilities in another; [17] the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability, or the use of a corporation as a subterfuge of illegal transactions; [18] and the formation and use of a corporation to transfer to it the existing liability of another person or entity.

*Greenspan v. LADT, LLC*, 191 Cal. App. 4th 486, 512-13 (2011) (internal alterations omitted) (quoting *Zoran Corp. v. Chen*, 185 Cal. App. 4th 799, 811–12 (2010)).

California courts caution that this list is not exhaustive and no single factor is determinative. The alter ego test should not be construed as a litmus test and "the conditions under which a corporate entity may be disregarded vary according to the circumstances in each case." *Automotriz Del Golfo De Sal S.A. de C.V. v. Resnick*, 47 Cal. 2d 792, 796 (1957); *see also Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539 (2000) ("courts must look at all the circumstances to determine whether the doctrine should be applied"). However, at a minimum, "ownership in a corporation is a necessary element for the application of the alter ego doctrine under California law." *Hickey*, 322 F.3d at 1129–30 ("[A]n individual must own at least a portion of a corporation before an alter ego relationship is deemed to exist under California law.").

The Court now addresses the addresses the parties' alter ego arguments to each non-plaintiff counterclaim defendant.

### 2.  **Non-Plaintiff Counterclaim Defendant Activ GmbH**

The first prong of the alter ego test requires "a showing that the parent controls the subsidiary to such a degree as to render the latter the mere instrumentality of the former." *Gerritsen v. Warner Bros. Entertainment, Inc.*, 116 F. Supp. 3d 1104, 1138 (C.D. Cal. 2015) (quoting *NetApp, Inc. v. Nimble Storage, Inc.*, 2015 WL 400251, *5 (N.D. Cal. Jan. 29, 2105)).

1   Direct evidence of manipulative control by the parent of its subsidiaries supports a finding of an

2   alter ego relationship. *See Institute of Veterinary Pathology, Inc. v. Cal. Health Laboratories, Inc.*,

3   116 Cal.App.3d 111, 120 (1981).

4         Aside from providing more details, Frontier has failed to muster new facts in the SACC

5   that demonstrate a unity of interest with plaintiff counterclaim defendants beyond its corporate

6   affiliation with them. The Court plainly rejected this theory in its previous Order, finding that it is

7   "well-established that "[t]otal ownership and shared management personnel are alone insufficient

8   to establish the requisite level of control." (Order on Motions to Dismiss, Dkt. No. 120, at 24

9   (citing *Ranza*, 793 F.3d at 1073).) Otherwise parent and subsidiary entities would always be

10  presumed alter egos.

11        Frontier has also added allegations that Activ GmbH made payments to Frontier on behalf

12  of ASH and AS (Wright). (SACC ¶ 55.) However, Frontier has provided no authority suggesting

13  that the Court should disregard the corporate form merely because a parent company has financed

14  its subsidiaries. *See Doe v. Unocal Corp.,* 248 F.3d 915, 927 (9th Cir. 2001) ("A parent

15  corporation may be directly involved in financing and macro-management of its subsidiaries,

16  however, without exposing itself to a charge that each subsidiary is merely its alter ego."); *United

17  States v. Pangang Grp. Co*., 879 F. Supp. 2d 1052, 1067 (N.D. Cal. 2012) (applying *Unocal* to

18  find no alter ego imputation).

19        Finally, Frontier again relies heavily on its fraudulent transfer theory to suggest that there

20  is manipulative control between Activ GmbH and its subsidiaries, arguing that the transfer of AS

21  (Wright) from ASH to GEC in December 2015 shows the requisite level of control. However, as

22  the Court previously directed, "[w]ithout any specific facts to support its theory that Activ GmbH

23  was involved [in the transfer], Frontier has not shown the requisite level of control of ASH by

24  Activ GmbH necessary for alter ego." (Order on Motions to Dismiss, Dkt. No. 120, at 24.)

25  Frontier has failed to provide such facts.

26        Accordingly, Frontier has failed to come forth with additional facts or argument to bolster

27  its unity of interest theory with respect to Activ GmbH. Given this failure, the Court need not

28  address the second prong of the alter ego analysis and declines to exercise jurisdiction.

11

### 3. Non-Plaintiff Counterclaim Defendant Kaveh Ertefai

With respect to Ertefai, Frontier alleges that unity of interest is established because Ertefai (1) is the "ultimate owner" of Activ GmbH, ASH, and GEC, as he identified himself to City officials, (SACC ¶¶ 4, 22, 34, 54, 146, 147(i), 151, 152(i), 156, 157(i)); (2) is an officer of Activ GmbH, ASH, and GEC (*id.* ¶¶ 147(ii), 152(ii), 157(ii)); and (3) exercised "control" over the Plaintiff entities during the alleged misconduct (e.g., the alleged fraudulent transfer of AS (Wright) from ASH to GEC) (*id.* ¶¶ 6, 10, 52, 53, 147(iii)–(vii), 148, 152(iii)–(iv), 152(vi)–(vii), 153, 157(iii)–(vi), 158).

The Court previously found that Frontier's allegation of ownership was conclusory and therefore fatal to its claim that Ertefai is an alter ego of plaintiff counterclaim defendants.[5] With respect to the minimal requirement of ownership (*supra* at 10:18-21), Frontier's new allegation that Ertefai was the "ultimate owner" satisfies that component. However, Frontier has still failed to allege any other indicia demonstrating a unity of interest aside from the alleged fraudulent transfer of AS (Wright) from ASH to GEC.[6] Thus, the reasoning relative to the failure to allege alter ego for Activ GmbH applies equally here. In sum, Frontier's claim that the alter ego doctrine requires that plaintiffs' contacts with the forum be imputed to the individual counterclaim defendants fails. Accordingly, the Court need not address the jurisdictional arguments which flow therefrom.

---

[5] Order on Motions to Dismiss, Dkt. No. 120, at 26-27.

[6] For example, Frontier still has not alleged that Ertefai comingled his own "funds and other assets" with any of the companies' assets. (*Cf.* Ertefai Decl. ¶ 51, Dkt. No. 126-1.) Nor has it alleged that Ertefai treats the assets of the corporation as his own. (*Cf. id.* ¶ 50.) S*ee Greenspan*, 191 Cal. App. 4th at 512-13 (courts consider "treatment by an individual of the assets of the corporation as his own" and "the holding out by an individual that he is personally liable for the debts of the corporation"); *Flores v. DDJ, Inc.*, No. 199 CV 5878 AWI DLB, 2007 WL 4269259, at *16 (E.D. Cal. Nov. 30, 2007) ("The failure to segregate the assets of the corporation from those of the alter ego defendant appears at the top of the list of factors considered by the courts and courts normally find several of the factors present before imposing alter ego liability." (citation omitted)). Moreover, Frontier has produced "no evidence that anyone dealing with [the companies] believed or would have reasonably believed that they were dealing with [Ertefai] in [his] personal capacity." *Id.* at *6. Even Frontier acknowledges that it knew it was dealing with Ertefai in his official capacities. (*See, e.g.*, SACC ¶ 53 ("Activ GmbH and Mr. Ertefai frequently attended meetings with Frontier and related third parties in California, during which Mr. Ertefai and other Activ GmbH agents specifically represented themselves as acting on behalf of Activ GmbH.").)

For the reasons set forth above, the motion to dismiss for lack of personal jurisdiction by non-plaintiff counterclaim defendant Activ GmbH is **GRANTED**. The motion to dismiss for lack of personal jurisdiction by non-plaintiff counterclaim defendant Kaveh Ertefai is **GRANTED IN PART** and **DENIED IN PART.** The motion is **GRANTED** with respect to Counts One (Breach of Contract) and Five (Declaratory Judgment). The motion is **DENIED** with respect to Counts Two (Violations of the Uniform Fraudulent Transfer Act), Three (Fraud), and Four (Civil Conspiracy).[7]

## II.   FAILURE TO STATE A CLAIM – ACTIV GMBH AND ERTEFAI

The Court has found it only has jurisdiction over non-plaintiff counterclaim defendant Kaveh Ertefai with respect to Counts Two (Violations of the Uniform Fraudulent Transfer Act), Three (Fraud), and Four (Civil Conspiracy). Thus, it only addresses the Rule 12(b)(6) motion on those three counts as they relate to Ertefai. The balance of the motion is **DENIED AS MOOT**.

### A.   Legal Standard

"Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)) (alteration in original). Even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)). The Court will not assume facts not alleged, nor will it draw unwarranted inferences. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

---

[7] In light of its ruling and analysis, the Court declines to find jurisdiction based upon the co-conspirator arguments made by Frontier. First, with respect to Activ GmbH, the Court finds the allegations to be insufficient. Next, with respect to Ertefai, because the Court finds it has specific jurisdiction over Ertefai for the fraud and civil conspiracy claims, the co-conspirator jurisdiction arguments are moot.

Additionally, Rule 9 establishes a heightened pleading standard for allegations of fraud. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (to be alleged with particularity under Rule 9(b), a plaintiff must allege "the 'who, what, when, where, and how'" of the alleged fraudulent conduct); *see also Tatung Co. v. Shu Tze Hsu*, 43 F. Supp. 3d 1036, 1060 (C.D. Cal. 2014) (applying Rule 9(b)'s heightened pleading standard to state law claims brought in federal court). Moreover, where a plaintiff alleges "a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of a claim[,] . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading of that claim as a whole must satisfy the particularity requirement of Rule 9(b)." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1103–04, 1106 (9th Cir. 2003) (holding "the circumstances constituting the alleged fraud [must] be specific enough to give defendants notice of the particular misconduct [alleged] so that they can defend against the charge and not just deny that they have done anything wrong" (internal quotation marks and citations omitted)).

Pursuant to Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief may be granted. Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)). The complaint must plead "enough facts to state a claim [for] relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If the facts alleged do not support a reasonable inference of liability, stronger than a mere possibility, the claim must be dismissed. *Id.* at 678-79; *see also In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (a court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

14

**B.     Analysis**

### 1.     Count Two: Violations of the Uniform Fraudulent Transfer Act (UFTA)

Frontier alleges liability against Ertefai as an alter ego of Activ GmbH and ASH. That theory of liability is not alleged properly. *See* Section I.B, *supra*. Thus, the motion to dismiss the UFTA claim with respect to Ertefai is **GRANTED**.

### 2.     Count Three: Fraud

Frontier alleges that Ertefai made material misrepresentations or omissions to Frontier regarding any effect of the AS (Wright) asset transfer on Frontier in light of the pending insolvency of Activ GmbH. Ertefai moves to dismiss, arguing that the SACC fails to state a fraud claim with respect to him because Frontier has not alleged he made a specific misrepresentation or omission.

To state a claim, Frontier must allege, *inter alia*, that Ertefai made a misrepresentation by "false representation, concealment, or nondisclosure" with the intent to defraud Frontier. *Lazar v. Superior Ct.*, 12 Cal.4th 631, 637 (1996). Frontier's claim is based on an affirmative misrepresentation, namely that, in December 2015, Ertefai made a material misrepresentation on behalf of plaintiffs when he met with Frontier representatives to discuss the proposed AS (Wright) asset transfer. (SACC ¶¶ 75-80.) Colin Bent, who accompanied Ertefai to the meeting with Frontier, summarized the proposal he and Ertefai made in a subsequent email to Frontier:

> while [ASH] will have little in way of assets under [the] proposal, Frontier **will still have recourse to [Activ] GmbH** and the assets housed in AS (Wright). Our view is that the proposed transfer to GEC **leaves Frontier neutral in terms of risk** related to the surety bonds and related indemnification.

(*Id*. at ¶ 78 [emphasis supplied].)  Unbeknownst to Frontier, it would not have any recourse against Activ GmbH in light of the impending insolvency due to the October 2015 €57 million arbitration award against Activ GmbH in an unrelated dispute. (*Id*. at ¶ 102.) Frontier alleges that, had it known about the impending insolvency, it would have immediately asserted its rights under the LLC Agreement to take complete control of AS (Wright) before it was transferred to GEC. (*Id*. at ¶ 186.)

15

1    The Court concludes that Frontier has satisfied its pleading burden. The SACC includes
2    specific allegations that, if true, raise a plausible inference of actual fraud by Ertefai. Given the
3    amount of detail alleged in the SACC regarding the "who, what, when, where, and how" of the
4    alleged fraudulent transfer, the Court is not persuaded by Ertefai's arguments to the contrary.
5    *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). The SACC enables Ertefai to "prepare an
6    adequate answer from the allegations." *Schreiber Distributing Co. v. Serv-Well Furniture Co.,*
7    *Inc.*, 806 F.2d 1393, 1400 (9th Cir. 1986). Nothing more is required at this stage.

Having found the SACC pleads actual fraud with particularity and states a claim sufficiently, Ertefai's motion to dismiss the fraud claim is **DENIED**.

### 3.   Count Four: Civil Conspiracy

Under California law, "[t]he elements for an action for civil conspiracy are (1) formation and operation of the conspiracy and (2) damage resulting to [counterclaim] plaintiff (3) from an act done in furtherance of the common design." *Thompson v. Cal. Fair Plan Ass'n*, 221 Cal. App. 3d 760, 767 (1990). The claim is "not a tort but rather a theory of joint liability whereby all who cooperate in another's wrong may be held liable." *Id*. Here, Frontier asserts its civil conspiracy claim to hold Ertefai liable for any action taken in furtherance of the conspiracy, regardless of which counterclaim defendant committed the act. (SACC ¶¶ 190–96.)

Ertefai argues that the SACC fails to allege an underlying tort on which Frontier can base a civil conspiracy claim. Ertefai also alleges that the SACC fails to allege the civil conspiracy claim with particularity. To survive a motion to dismiss a civil conspiracy claim, "[i]t is not enough to show that defendants might have had a common goal unless there is a factually specific allegation that they directed themselves toward this wrongful goal by virtue of a mutual understanding or agreement." *Id*. The SACC includes the particular allegation that plaintiff and non-plaintiff counterclaim defendants reached an understanding by:

> agreeing to transfer ASH's interest in AS (Wright) while: intentionally failing to disclose to Frontier Activ Solar GmbH's insolvency; misrepresenting that Frontier would be 'left neutral' in terms of risk as a result of the transfer, despite the Indemnification Agreement being effective against only ASH, which is now without assets as a result of this transfer; and accessing the Wells Fargo

16

> Bank Account, and router, without Frontier's authorization, in an attempt to secure the fraudulent transfer.

(SACC ¶ 191.)

These very specific allegations raise a plausible inference of a conspiratorial agreement among all counterclaim defendants, including Ertefai—who, as discussed in Section II.C, Frontier alleges made the misrepresentation regarding Activ GmbH's insolvency—to commit the tort of fraud. *Id*. The motion to dismiss the civil conspiracy claim with respect to Ertefai is therefore **DENIED**.

### III. COUNTERCLAIM DEFENDANTS' MOTION TO DISMISS FRAUD CLAIM

All counterclaim defendants (plaintiffs and non-plaintiff counterclaim defendants) move to dismiss the fraud claim, arguing that Frontier's allegations do not establish the element of justifiable reliance in order to state a claim for fraud, and that Frontier cannot overcome the economic loss rule.

#### A. Legal Standard

At this juncture, Frontier's only burden is to plead "enough facts to state a claim [for] relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is only proper if there is a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

#### B. Discussion

All of counterclaim defendants' arguments attack the merits of Frontier's fraud claim. In short, the motion invites the Court to resolve the parties' underlying contract dispute and conclude there was no justifiable reliance, and therefore no fraud, as a matter of law. Likewise, counterclaim defendants ask the Court to interpret contractual provisions in the LLC Agreement in order to find that the economic loss rule bars recovery for tort liability based on a contractual dispute. Such factual analysis is inappropriate on a Rule 12 motion.

Accordingly, the motion to dismiss the fraud claim is **DENIED**.

## IV. CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. The motion to dismiss for lack of personal jurisdiction by non-plaintiff counterclaim defendant Activ GmbH is **GRANTED**. The motion to dismiss for lack of personal jurisdiction by non-plaintiff counterclaim defendant Kaveh Ertefai is **GRANTED IN PART** and **DENIED IN PART** as follows:
   a. The motion is **GRANTED** with respect to Counts One (Breach Of Contract) and Five (Declaratory Judgment).
   b. The motion is **DENIED** with respect to Counts Two (Violations of the Uniform Fraudulent Transfer Act), Three (Fraud), and Four (Civil Conspiracy).
2. The motion to dismiss for failure to state a claim by non-plaintiff counterclaim defendant Kaveh Ertefai is **GRANTED IN PART** and **DENIED IN PART** as follows:
   a. The motion to dismiss Count Two (Violations of the Uniform Fraudulent Transfer act) with respect to Ertefai is **GRANTED**.
   b. The motion to dismiss Counts Three (Fraud) and Four (Civil Conspiracy) with respect to Ertefai is **DENIED.**

The balance of the motion is **DENIED AS MOOT**.

3. The motion to dismiss Count Three (Fraud) by all counterclaim defendants is **DENIED**.

This Order terminates Dkt. No. 126.

**IT IS SO ORDERED.**

Dated: February 15, 2017

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**